# M. B. VIERS v. STATE.

### No. A-1619.   Opinion Filed July 19, 1913.

### (134 Pac. 80.)

1. **GRAND JURY—Motions to Set Aside Indictment—Summoning Talesmen.** The statute (section 3690, Rev. Laws 1910) requires that each jury list shall be made up of names of qualified taxpayers, to be selected, as near as practicable, in due proportion to the voting strength from all parts of the county; that such names shall be placed in the jury box. Section 3692, Rev. Laws 1910, expressly provides that if a grand jury is ordered, the first names drawn, not to exceed 24, shall be summoned as grand jurors, and the grand jury shall be impaneled from said persons. Section 5714, Id., provides that when a vacancy exists in the grand jury panel, the court must order the names of additional jurors to be drawn from the jury box in the same manner as the original grand jurors were drawn. In this case the record shows that upon the assembling of the persons summoned as grand jurors whose names had been drawn from the jury box, the court excused a number of those so summoned, leaving an insufficient number to complete the grand jury panel. Thereupon the court directed that an open venire be issued to the sheriff for four talesmen to be summoned from the body of the county to complete the grand jury panel, and one member was summoned from the bystanders. Held, that the court had no power to order grand jurors to be summoned from the body of the county, and that a motion to set aside the indictment on this ground should have been sustained.

2. **PROSECUTING ATTORNEYS — Assistant County Attorneys — Statutory Provisions.** Under the statute (section 1563, Rev. Laws 1910) authorizing county attorneys in counties having a population between 25,000 and 35,000, to have one assistant, an additional assistant, appointed by the county attorney with the assent of the board of county commissioners, is not a legally constituted assistant county attorney.

3. **SAME—County Attorneys—Duties—Delegation of Discretion.** The county attorney is a quasi judicial officer, and he and his legally appointed assistant represent public justice exclusively, and stand indifferent as between the defendant and any private interest; and, while the county attorney may employ assistants in various ways not involving his official discretion or responsibility, he cannot delegate this discretion, except to an assistant duly appointed and qualified as provided by law.

4. **GRAND JURY—Effect of Appearance of Unauthorized Persons—Indictment.** Under section 5726, Rev. Laws 1910, the county attorney, or an assistant duly appointed and qualified as provided by law, may at all times appear before the grand jury, but no other person is permitted to be present during their sessions,

except the members and a witness under examination, and no person is permitted to be present during the expression of their opinion and the giving of their votes upon any matter before them; and, when a special assistant county attorney, not legally appointed, appears before them for the purpose of performing the duties devolving upon the county attorney, indictments found by such grand jury, which were considered when such attorney was before them, on proper motion should be set aside.

*Appeal from County Court, Tulsa County;*
*N. J. Gubser, Judge.*

M. B. Viers was convicted of violating the prohibitory law, and appeals. Reversed.

*Davidson & Williams,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.

DOYLE, J. Plaintiff in error was convicted in the county court of Tulsa county upon an indictment presented by a grand jury in the district court, which was duly transferred from the district court to said county court, wherein the defendant was charged with having unlawfully sold to one J. W. Turley, one glass of whisky, and in accordance with the verdict of the jury he was sentenced to confinement in the county jail for 90 days, and to pay a fine of $250. An appeal was perfected by filing in this court, February 21, 1912, a petition in error with case-made.

It appears from the record that upon his arraignment in the county court the defendant filed his duly verified motion to set aside the indictment, in part as follows:

"Because the grand jury that found and presented the purported indictment herein was illegal, and all its acts and doings, including the finding and presenting of this purported indictment, are void, for the reason that all the names of the persons constituting the said grand jury were not drawn from the jury list made out by the jury commissioners on the 9th day of January, 1911, and were not summoned as by law required. Charles Stout, one of the panel of said grand jury, was an illegal member of the same for the reason that his name is not on the jury list made out by the jury commissioners of Tulsa county, Okla., on the 9th day of January, 1911, or any time since, and because

his name was not drawn from the jury box filled by said commissioners, as required by law, and because he was not summoned or impaneled as a member of said grand jury as provided by law; that prior to and during the entire session of the grand jury which found and presented this purported indictment, one Luther James was the duly appointed, qualified, and acting assistant county attorney of Tulsa county, Okla., in force during the session of said grand jury; that the said county attorney of Tulsa county, Okla., had no authority to appoint or have more than one assistant county attorney; that during the deliberations of the grand jury that found and presented the purported indictment herein, one Phillip Kates was present in the grand jury room with said grand jury, pretending to act as assistant county attorney of Tulsa county, Okla., and examined witnesses before said jury, including witnesses upon whose testimony the purported indictment herein was found, and advised the grand jury as to their duties generally and specially, and that they should find and return an indictment against the defendant upon said testimony; that said Kates was not assistant county attorney of Tulsa county, Okla., at said time, and had no authority to be present in the grand jury room while the grand jury was in session, or examine witnesses before it, and by reason of these facts said purported indictment against the defendant was vitiated and was illegal and void."

Thereupon it was stipulated and agreed by and between the county attorney and counsel for the defendant, in part as follows:

"It is agreed that the name of Charles Stout, one of the panel of said grand jury, is not in the jury list made out by the jury commissioners of Tulsa county, Okla., on the 9th day of January, 1911, or at any time since, and that his name was not drawn from the jury box filled by said commissioners; that the Honorable L. M. Poe directed that a panel of four grand jurymen be issued, and that said Charles Stout was summoned on said panel, and was placed upon said grand jury by said L. M. Poe.

"The following order was made by the Hon. L. M. Poe, as judge of the district court of Tulsa county, Okla.: 'The State of Oklahoma, to the Sheriff of Tulsa County—Greeting: You are hereby commanded to summon (4) four good and lawful men having the qualifications of jurors, from the body of Tulsa county, to be and appear before the Honorable L. M. Poe, judge of the district court of Tulsa county, state of Oklahoma, forth-

with, to then and there serve as grand jurors in the above-entitled cause in said court. Of this writ you will make due return as the law directs, and hereof fail not. Witness my hand and seal of the said court at Tulsa, Oklahoma, this 5th day of June, 1911. By order of the Judge.'

"Indorsed on the back thereof is the following: 'Sheriff's Return. Received this writ on the 5th day of June, 1911, and served the same by summoning: 1. Chas. Stout. 2. C. S. Olley. 3. Dean Hogan. 4. Chas. Vandiver—all good and lawful men from the body of the county. Wm. McCullogh, Sheriff, by L. L. Hall, Deputy.'

"(9) It is further agreed that prior to and during the entire session of the grand jury, which found and presented this purported indictment, one Luther James was a duly appointed, qualified, and acting assistant county attorney of Tulsa county, Okla.; that during the deliberations of the grand jury that found and returned the purported indictment herein, one Phillip Kates was present in the grand jury room with said grand jury; that said Kates examined witnesses before said grand jury, including witness upon whose testimony the purported indictment herein was found, and advised the grand jurors with respect to their duties generally and specially; that said Kates, at the time he was rendering the services aforesaid, was claiming to act as assistant county attorney of Tulsa county, Okla.; that Pat Malloy, the county attorney of Tulsa county, Okla., had appointed, in writing, the said Kates an assistant county attorney of Tulsa county, Okla.; that the appointment of said Kates was made after the appointment of said James, and while the said James was an assistant county attorney of Tulsa county, Okla.; and that the said Luther James was, at all the times named or mentioned in this stipulation, an assistant county attorney of Tulsa county, Okla. It is further agreed that at all times set forth in this stipulation Tulsa county, Okla., had a population of not more than 35,000 inhabitants.

"Any notice that may be required by section 6738 of Snyder's Compiled Laws of Oklahoma, Edition of 1909, is hereby waived. [Signed] Pat Malloy, County Attorney for Tulsa Co. [Signed] Davidson & Williams, Attys. for Defendant."

Upon said date, and after the filing of the stipulation, the state, through Pat Malloy, as county attorney, and the defendant, through his counsel, Davidson & Williams, entered into a further stipulation as, to additional facts upon which said mo-

tion should be heard, and said stipulation was dictated into the record, and is in words and figures as follows, to wit:

"Additional Stipulation. It is hereby stipulated and agreed that stipulation No. 9 of the original stipulations be amended so as to show the following facts with reference to the authority of Phillip Kates, who appeared before said grand jury, and who performed the duties therein mentioned and set forth: That Pat Malloy was at all times herein mentioned, the duly qualified and acting county attorney for Tulsa county, Okla.; that on the 5th day of June, 1911, the said Pat Malloy appointed the said Phillip Kates as deputy county attorney for Tulsa county, Okla.; that said appointment was in writing, and said instrument of appointment was duly filed in the office of the county clerk for Tulsa county, Okla., together with his oath of office, which the said Phillip Kates on the said date took; that said appointment of the said Phillip Kates was not revoked until subsequent to the final report of the grand jury; that during the session of said grand jury, and beginning on the 5th day of June, there was held a term of the district court for said county; that on said 5th day of June, and until the —— day of June, 1911, continuously, said district court was engaged in the trial of criminal cases; that in all of said cases the county attorney's office represented the state of Oklahoma; that the state of Oklahoma was the plaintiff in all of said cases; that from the 5th day of June, 1911, until the 15th day of June, 1911, the county court for Tulsa county, Okla., was continuously engaged in the trial of criminal cases; that the state of Oklahoma was the plaintiff in all of the cases on trial by said court; that the state of Oklahoma was represented at the trial of said cases by the county attorney's office; that the said Luther James and the said Phillip Kates were the only persons who performed or exercised any of the duties of a deputy county attorney for Tulsa county during said time; that prior to the appointment of said Phillip Kates as deputy county attorney the said Pat Malloy orally took the matter of said appointment up with the board of county commissioners then in session, and the said board of county commissioners, without resolutions, orally stated that the said Phillip Kates might be appointed with their consent; that thereafter, on the first Monday in July, the said board in session regularly allowed the said Phillip Kates the sum of $37.50 as his compensation for services rendered as such deputy county attorney. This stipulation in no wise controverts the statements of the original stipulation No. 9, but is merely in addition thereto."

The court overruled the motion to set aside the indictment and allowed an exception. This action of the court is assigned as error.

The objections advanced in the motion to set aside, concisely stated, are two, namely: First, that the grand jury was not drawn and impaneled as provided by law, in that the grand jury panel was completed from an open venire, and not from the jury box; second, because of the fact that a special assistant county attorney was permitted to be present during the sessions of the grand jury.

Our Procedure Criminal provides (section 5780, Rev. Laws 1910):

"The indictment or information must be set aside by the court in which the defendant is arraigned, and upon his motion in any of the following cases:

"First. When it is not found, indorsed, presented or filed, as prescribed by the statutes, or when the grand jury is not drawn and impaneled as provided by law, and that fact is known to the defendant at or before the time the jury is sworn to try the cause: Provided, that the defendant shall be conclusively presumed to know matters of record.

"Second. When the names of the witnesses examined before the grand jury are not made to appear on some part of the indictment, as provided in this chapter.

"Third. When a person is permitted to be present during the session of a grand jury while the vote on the finding of the indictment is being taken, or when it is shown that after the grand jury was first impaneled any member or members thereof, were discharged and their places filled by persons not regularly drawn from the jury list, as provided by law, and that they were admitted into the grand jury or took part in their deliberations, or that the grand jury was not impaneled anew as a whole body in open court."

Our Constitution provides (section 18, Bill of Rights):

"A grand jury shall be composed of twelve men, any nine of whom concurring may find an indictment or true bill. A grand jury shall be convened upon the order of a judge of a court having the power to try and determine felonies, upon his own motion; or such grand jury shall be ordered by such judge upon the filing of a petition therefor signed by one hundred resident taxpayers of the county; when so assembled such grand jury shall

have power to investigate and return indictments for all character and grades of crime, and such other powers as the Legislature may prescribe: Provided, that the Legislature may make the calling of a grand jury compulsory."

When the power to call a grand jury is exercised by a district judge, on his own initiative, or upon the filing of proper petition therefor, the statute provides the procedure to be followed, and our jury law is in part as follows:

Section 3689, Rev. Laws 1910, provides:

"It shall be the duty of the judge of the district court, for each county, to appoint, on or before the first day of January of each year, three discreet, honorable and reputable persons, one from each county ·commissioner's district, having the qualifications of jurors as prescribed in this chapter, not more than two of whom shall be of the same political party, and who shall not be interested in any cause, civil or criminal, pending in any court of this state, which persons shall constitute a board of jury commissioners for the district and county court."

Section 3690, *Id.*, provides that said jury commissioners shall select a list of names, one each for the district court and county court, which list shall be selected from the names of the tax rolls of said county, and that "each jury list shall be made up of names of persons from the various municipal townships in the county in proportion, as nearly as practicable, to the voting strength of such township."

Section 3691, *Id.*, provides for two separate certified lists of the names drawn for the said courts: One to be delivered to the clerk of the district court; the other to be delivered to the judge of the county court.

Section 3692, *Id.*, provides the mode and manner of drawing jurors for the district court, and it is therein provided, that:

"Upon the completion of said drawing, said clerk, or his deputy, shall issue separate venires for the grand and petit jurors, returnable at such a time as the judge in his order may direct. The first names drawn, to the number stated in the judge's order, not to exceed twenty-four, if a grand jury is ordered, shall be summoned as grand jurors, and the grand jury shall be impaneled from said persons. If the judge so directs, the persons summoned for the grand jury panel and not used may be transferred to the petit jury panel. Additional and other drawing of

as many names as the court may order may be had at any such time as the court or judge may order for the completion of a grand or petit jury panel, or for the impaneling of a new grand or petit jury, during any term of court, if, in the judgment of the court, the same shall be necessary; or, if, for any cause, the court, in its discretion, shall deem other jurors necessary."

Section 3693, *Id.*, provides:

"At any time during the term of any court, after the petit jury has been drawn and summoned in the manner herein provided for, when, for the trial of any cause, civil or criminal, the regular panel of jurors shall appear to be insufficient, the jury may be completed from talesmen, or the court may direct that an open venire be issued to the sheriff or other suitable person, for such number of jurors as may be deemed necessary, to be selected from the body of the county, or from such portion of the county as the court may order: Provided, that no person shall serve as a talesman oftener than once a year."

Section 3701, *Id.*, provides:

"A substantial compliance with the provisions of this chapter shall be sufficient to prevent the quashing or setting aside of any indictment of a grand jury chosen hereunder, unless the irregularity in drawing, summoning or impaneling the grand jury resulted in depriving a defendant of some substantial right, but such irregularity must be specifically presented to the court on or before the cause is first set for trial. A substantial compliance with the provisions of this chapter shall be sufficient to prevent the setting aside of any verdict rendered by a jury chosen hereunder, unless the irregularity in drawing and summoning or impaneling the same resulted in depriving a party litigant of some substantial right: Provided, however, that such irregularity must be specifically presented to the court at or before the time the jury is sworn to try the cause."

Section 5714, *Id.*, Procedure Criminal, provides as follows:

"A member of the grand jury may, for ill health of himself or immediate family, or other cause rendering him unable to serve, be discharged before the term is ended or the labor of the grand jury completed; or if the judge becomes satisfied that any grand juror is willfully refusing to discharge his duty, the court may order his discharge. In either event, or in case of the death of one or more grand jurors, as many names as the court may order shall be drawn from the jury box in the same manner the original grand jurors were drawn, and from the names so drawn there shall be summoned as many grand jurors as can be

found and are able to attend as necessary, and if found they shall be summoned in the order in which their names were drawn from the box. If the number be not thus obtained there shall be another drawing in the same manner. When a sufficient number so drawn appears to fill the panel, the grand jury shall in open court be reimpaneled, but subject to challenge and be charged and sworn in the same manner as when the grand jury was originally impaneled."

It will be observed that under the statute the grand jury must be composed of persons whose names have been drawn from the jury box. Section 3692, *supra,* expressly provides that the first names drawn, not to exceed 24, if a grand jury is ordered, shall be summoned as grand jurors, and the grand jury shall be impaneled from said persons. It permits the transfer of names summoned as grand jurors to the petit jury panel when they are not selected on the grand jury, but it does not permit the transfer of names on the petit panel to the grand jury panel when not used on the petit jury. It provides specifically for additional and other drawings under order of the court to complete a grand or a petit jury panel. Section 3693, *supra,* expressly provides that the petit jury panel may be completed from talesmen, or the court may direct that an open venire be issued for such number of jurors as may be deemed necessary. The language of this section leaves no reason to doubt that it applies only to petit jurors, and not to grand jurors.

The record shows, upon the assembling of the persons summoned as grand jurors, whose names had been drawn from the jury box, under the order of the court, that the court excused a number of those so summoned, leaving an insufficient number to complete the grand jury panel of twelve men. The court then directed that an open venire be issued to the sheriff for four talesmen to be summoned from the body of the county to complete the grand jury panel, and one member of the grand jury, Charles Stout, was summoned from the bystanders and served as a member of the grand jury in the finding and returning of this indictment. The grand jury must be selected, drawn, and impaneled as provided by law. The grand jury does not by our law consist of twelve men congregated by the mere order of

the court. It consists of twelve men selected, drawn, and impaneled according to the requirements of the law, and if the law is not followed, it is an incompetent grand jury. Our law provides that any one indicted by such a grand jury may question their power by a motion to set aside the indictment, and he can not be required to answer to a charge against him unless it has been preferred according to the forms of law. The importance of securing fair-minded, impartial, intelligent men for grand jurors, who without bias or prejudice will weigh the evidence, and be governed by it alone, cannot be overestimated. To secure such grand jurors, the statute requires the names of qualified taxpayers to be selected in due proportion from all parts of the county, to be placed in the jury box. There is a sound reason for this. The petit jury panel cannot very well be packed against a defendant on trial, the defendant by his counsel may examine a petit jury panel minutely as to qualifications, bias, or prejudice, and may challenge for cause, and in addition is entitled to his peremptory challenges allowed by law, but in the case of a grand jury panel, the parties to be investigated by the grand jury rarely ever know, in advance, of their investigation, and have no opportunity to examine the grand jury panel as to bias or prejudice, or to challenge for cause or peremptorily, and this is one reason why it is not permitted, under the law, to select members of the grand jury from the body of the county, under an open venire.

It will also be noticed that section 5714, *supra,* provides for the filling of all vacancies that may occur at any time in the grand jury panel, and that when a vacancy exists the court must order the names of additional jurors drawn from the jury box in the same manner as the original grand jurors were drawn, and they shall be summoned in the order in which their names were drawn from the box, thus confirming our conclusion that the drawing and impaneling of the grand jury must be of persons whose names shall be drawn from the jury box, and that the grand jury panel cannot be completed or vacancies filled from talesmen. The statutory direction is clear and explicit.

It is our opinion that the court had no power to order an open venire to complete the grand jury, and this action of the court was in disregard of the law, and did not constitute a sub-

stantial compliance with the provisions of the jury law as contemplated by section 3701, *supra.* The grand jury which returned this indictment not being composed entirely of persons whose names were selected by the jury commissioners and drawn from the jury box, the motion to set aside the indictment should have been sustained on this ground alone.

We are also of opinion that the second objection was well taken. Section 1563, Rev. Laws 1910, provides that:

"In all counties having a population of not over twenty-five thousand the board of county commissioners may, in their discretion, allow one assistant county attorney at a salary of not to exceed seventy-five dollars per month; and in counties having a population of over twenty-five thousand they shall allow one assistant county attorney a salary of not to exceed one hundred dollars per month."

While it appears that Phillip Kates, Esq., had been appointed by the county attorney for a limited time to assist the county attorney's office in its stress of business, and to attend to the business that the county attorney and his legally appointed assistant could not attend to by reason of the excessive demand on their time, and that the board of county commissioners sanctioned Mr. Kates' appointment, that did not constitute him a legally appointed assistant county attorney. In the case of *Mc-Garrah v. State, ante,* 133 Pac. 260, it is said:

"We know of no rule of law whereby a public officer may delegate power or authority involving official discretion or responsibility, except as prescribed by the statute. The law has very carefully guarded the administration of public justice from any interested or unauthorized intermeddling. The county attorney is a very responsible officer, selected by the people, and vested with a wide personal discretion, intrusted to him as a minister of justice. There are many reasons why a power of this kind should be confined to the prosecuting officer. He is expected to be impartial in abstaining from prosecuting, as well as in prosecuting, and to guard the real interests of public justice in favor of all concerned. It is therefore of the highest importance to the public that this power should be carefully exercised, and that the responsibility should rest upon the officer to whom it is confided. By section 1557, Rev. Laws 1910, a county attorney is disqualified from becoming in any way en-

tangled with private interests, or grievances connected with the private practice of law. The office of county attorney is quasi judicial, and the county attorney and his legally appointed assistant must be exclusively the representative of public justice, and stand indifferent as between the defendant and any private interest. No doubt a county attorney may employ assistants in various ways, not involving his official discretion or responsibility; but our laws have only allowed his official discretion to be delegated where assistant county attorneys have been provided for by the statute. The public have a right to insist upon the performance of public duties that are strictly official in the prosecution of crime by county attorneys and assistants duly appointed and qualified as provided by law, and we think it would be directly contrary to public policy to allow or permit any general delegation of the county attorney's power or responsibility in this respect."

Our Procedure Criminal provides (section 5726, Rev. Laws 1910):

"The grand jury may at all reasonable times ask the advice of the court or of the county attorney. The county attorney may at all times appear before the grand jury for the purpose of giving information or advice relative to any matter cognizable before them and may interrogate witnesses before them whenever he thinks it necessary; but no other person is permitted to be present during their sessions except the members and a witness actually under examination and no person whosoever must be permitted to be present during the expression of their opinions or the giving of their votes upon any matter before them."

Under section 1558, Rev. Laws 1910, the district court may appoint, by an order to be entered in the minutes of the court, some suitable person to perform for the time being the duties required by law to be performed by the county attorney, when the county attorney is absent from the court, or unable to attend to his duties, or disqualified to act, or where the office is vacant, but no other power of appointment is given under the law. There is no authority vested in the board of county commissioners to appoint or assent to the appointment by the county attorney of other assistants than those provided for by law. Hence Mr. Kates was not a legally constituted assistant county attorney.

It is the plain policy of the law to permit no one in the grand jury room except the county attorney, or an assistant duly appointed and qualified as provided by law.

In *Hartgraves v. State,* 5 Okla. Cr. 266, 114 Pac. 343, 33 L. R. A. (N. S.) 568, Ann. Cas. 1912D, 180, Furman, P. J., delivering the opinion of the court, said:

"We believe that it is the plain meaning of the laws and Constitution of Oklahoma that a regularly elected or appointed officer shall conduct all criminal prosecutions. It is true that it is entirely proper and legitimate for counsel to be employed to assist the county attorney in open court in the prosecution of a criminal case, but even then the county attorney should never lose control of the case, and such assistant counsel should discharge only such duties in the prosecution of the cause as are assigned him by the county attorney. But it is highly improper for counsel employed to prosecute a case to be permitted to go into the grand jury room where the defendant cannot be heard and has no one to represent him. This duty should be performed alone by the proper officer of the law. The case of *Fooshee v. State,* 3 Okla. Cr. 677, 108 Pac. 554, does not conflict with the views here expressed. In that case the attorney who appeared before the grand jury was the regular appointed deputy county attorney of Carter county, and his appointment was a matter of record in the county attorney's office of that county. We therefore hold that the trial court erred in not sustaining the motion made by the defendant to set aside the indictment."

See, also, *State v. Maben,* 5 Okla. Cr. 581, 114 Pac. 1122.

If the county attorney was overworked by reason of having two courts in session, engaged in the trial of criminal cases, and a grand jury on his hands at one and the same time, he should have directed his legally constituted assistant to attend the grand jury, or have attended the grand jury himself and performed his duties there. His duties in the grand jury room are the most important duties he has to perform, and those most rigidly enjoined upon him by the law.

There are other provisions of our statute which may be invoked whenever required by the necessities of public justice. Under section 8056, Rev. Laws 1910, the Governor is given the power to employ counsel to protect the rights or interests of the state in any action, civil or criminal, and the counsel so em-

ployed under the direction of the Governor may prosecute offenses against the laws of the state, and may institute and conduct proceedings before grand juries. Under section 8057 the Attorney General, when requested by the Governor or either branch of the Legislature, may appear for the state in the *nisi prius* courts and prosecute offenses against the laws of the state, but no such question arises in this case.

For error of the court in overruling the motion to set aside the indictment, the judgment herein is reversed.

ARMSTRONG, P. J., and FURMAN, J., concur.