# MACK GRAVITT v. STATE.

No. A-6603.   Opinion Filed July 20, 1929.
(279 Pac. 968.)

Hodge & Schenk, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J. The plaintiff in error, hereinafter called defendant, was convicted in the county court of Carter county on a charge of selling intoxicating liquor, and was sentenced to pay a fine of $50 and to be imprisoned in the county jail for 30 days. The cause is now on appeal in this court.

The defendant was indicted by a grand jury in Carter county, and on motion of the county attorney the indictment was transferred to the county court for trial, as provided by law. The first error complained of by the defendant is that the grand jury which returned the indictment against him was not drawn, impaneled, and sworn as required by law. On the 2d day of September, 1926, Hon. W. F. Freeman, district judge in Carter county, made the following order:

"In the District Court of Carter County, State of Oklahoma.

"Order.

"Whereas, a request has been filed with the district court in and for Carter county, state of Oklahoma, calling for the grand jury; and whereas, such request is presented by petitions signed by more than one hundred taxpaying voters of said county and state; and whereas, in accordance with the provisions of our Constitution providing for a grand jury, it is the mandatory duty of the district judge to convene the grand jury; Now, therefore, it is ordered and directed that the deputy clerk, Jesse Lasley, and the undersheriff, T. B. McLish, do forthwith proceed to draw from the jury box of said county and state the names of (24) jurors, and that the said deputy clerk,

Jesse Lasley, summon said jurors to appear at the courthouse at 9 o'clock a. m. on Monday, the 13th day of September, 1926, said service to be made in accordance with the laws of this state in such cases made and provided; and it is so ordered. Done in chambers this the 2d day of September, 1926.

"W. F. Freeman."

It appears from the case-made that this order was duly filed in the office of the court clerk of Carter county on the day the same was issued. Fay Wallace, court clerk, testified that she notified Judge Freeman that she would be out of town, and requested the judge to issue the order to Jesse J. Lasley for the drawing of the grand jury, in case the judge desired to make the order in her absence. The question presented for the consideration of this court is: Does the order issued by the judge of the district court, and the proceedings had thereunder, substantially comply with section 3517, Comp. St. 1921, which reads as follows:

"* * * Prior to or during any term of court at which a grand or petit jury shall be required, the judge of the district court shall certify to the clerk of the district court the number of jurors that will be required for either a grand or petit jury and shall direct said jury to be drawn and summoned at such time as he may indicate. Upon receiving such order, the clerk of the district court, or his deputy, shall notify the sheriff, or his deputy, of the time of the drawing of such jury, and the sheriff, or one of his deputies, and the clerk of the district court, or one of his deputies. * * *"

Instead of the order for the calling of the grand jury being directed or addressed to the clerk of the district court, as the statute provides, it does not appear to have been addressed to anybody. The record does disclose however that the order was filed in the office of the court clerk on September 2, 1926, and recorded in the District

Court Journal No. 22 at page 171. While this procedure was irregular, it constituted a substantial compliance with the provisions of the statute that the "district judge shall certify to the clerk of the district court the number of jurors required." In this order the number was given as 24, and the direction as to the time said jurors were to be summoned was given, and they were summoned to appear at the time directed in the court's order, and did appear at that time. The question is: Did the direction that the deputy court clerk and the undersheriff draw this jury from the box render the panel void?

Section 3517, supra, expressly provides that the names of the jurors may be drawn from the box either by the clerk or his deputy, or the sheriff or one of his deputies. There is no provision that the deputies may only act in the absence of or because of the disqualification of their superiors. Section 3526, Comp. St. 1921, provides:

"A substantial compliance with the provisions of this chapter shall be sufficient to prevent the quashing or setting aside of any indictment of a grand jury chosen hereunder, unless the irregularity in drawing, summoning or impaneling the grand jury resulted in depriving a defendant of some substantial right, but such irregularity must be specifically presented to the court on or before the cause is first set for trial. * * *"

These are salutary provisions of the law, designed to avoid expense to the taxpayers and delays in judicial procedure. It is not contended that any of those persons who served on the grand jury that returned the indictment in this case were not regularly selected by the jury commissioners, or that there was not a strict compliance with the law in the manner in which their names were drawn from the box by the deputy court clerk and deputy sheriff, nor is it contended that any of the grand jurors

did not possess any of the legal qualifications as grand jurors; the contention of the defendant being that, since the provisions of section 3517 were not literally complied with, therefore the grand jury was not legally drawn, impaneled, and sworn as provided by law.

In the case of Hess v. State, 73 Ind. 537, that court in substance held that the statutory inhibition against the clerk issuing, without an order of the judge, a venire for the attendance of grand jurors, constitutes no restriction on the power of the court to organize the panel, if found in attendance, although they have come in response to a summons issued without prescribed order therefor.

In State v. Marsh, 13 Kan. 596, that court held in substance that, while a grand jury should only be called by order of the district court, yet when one has been called by order of a judge in vacation, and has been impaneled, charged, and sworn by the court, it is a de facto grand jury, and under the statutes no objection to an indictment can be raised on that ground, where the irregularity in the opinion of the court does not amount to corruption.

In State v. Connell, 49 Mo. 282, the court in substance says that under the statute of Missouri the fact that no order of the court for the summoning of the grand jury was made was neither a ground for challenge nor for setting aside the indictment.

In the case of State v. Pollock, 5 Okla. Cr. 26, 113 Pac. 207, this court had before it the question of the validity of an indictment returned by a grand jury composed of two men first drawn and excused, and then recalled for service when it was necessary to repanel the grand jury, because it was discovered that one member was a

minor. In commenting on the construction to be given our jury statute, this court in part said:

"The question which now presents itself is as to whether or not the court had the power to temporarily excuse R. E. Stone and R. L. Robertson, and to place them on the panel of the reorganized grand jury. We fully agree with counsel for appellee that, under the common-law doctrine of a strict construction of penal statutes which prevails in most of the states of the Union, such action upon the part of the trial court would not only be illegal, but would also be ground for reversal, but the authorities cited by counsel for appellee are not applicable to the criminal jurisprudence of Oklahoma.

"Section 6487, Snyder's Comp. Laws Oklahoma 1909, is as follows: 'The rule of common law that penal statutes are to be strictly construed has no application to this chapter. This chapter establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be liberally construed, with a view to promote its objects, and in furtherance of justice.'

"Section 3995, Snyder's Comp. Laws Oklahoma 1909, is as follows: 'A substantial compliance with the provisions of this act shall be sufficient to prevent the quashing or setting aside of any indictment of a grand jury chosen hereunder unless the irregularity in drawing, summoning, or impaneling the grand jury resulted in depriving a defendant of some substantial right, but such irregularity must be specifically presented to the court on or before the cause is first set for trial.'

"Section 6957, Snyder's Comp. Laws Oklahoma 1909, is as follows: 'On an appeal the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties.'

"Under these sections, it is plain that the common-law doctrine of a strict construction of penal statutes

has no application to the criminal laws of Oklahoma, and, indeed, should have none. * * * When the law has been substantially complied with, and it is not shown that the defendant has been deprived of some substantial right, he will not be heard to complain. That this is the modern doctrine there can be no question.

" 'But statutes regulating the manner of making jury lists and the selection and drawing of grand jurors are frequently held to be directory merely and not mandatory; and it may be laid down as a general rule that courts do not look with indulgence upon objections to irregularities in selecting or drawing grand jurors committed without fraud or design and which have not resulted in placing upon the panel disqualified jurors, and that mere irregularities not affecting the competency of any of the jurors, at least such as do not amount to a substantial departure from the statutory requirements, but show an honest intention to conform thereto will not affect the validity of their proceedings. 20 Cyc. p. 1306.

"The reasons for this rule of law are obvious. The grand juries do not try cases, but merely prefer charges against the accused. The manner of their selection is ordinarily of little consequence to a defendant, he being entitled to claim only fair and impartial grand jurors who possess the necessary qualifications, while, on the other hand, it is of great consequence to the administration of justice that it shall not be delayed by mere technical objections."

The rule laid down in Pollock v. State, supra, has been followed by this court in Middleton v. State, 16 Okla. Cr. 321, 183 Pac. 626, and Herndon v. State, 16 Okla. Cr. 586, 185 Pac. 701. Under section 3517, Comp. St. 1921, it was the duty of the district judge to direct the order for the drawing of the grand jury to the court clerk, and to direct the court clerk and the sheriff to draw the needed jurors from the jury box. We can see no good reason for the judge failing to follow the provisions of section 3517,

and are not approving this kind of procedure. We are only concerned with one question, and that is: Was the order of the judge and the doings of the deputy court clerk and deputy sheriff a sufficient compliance with the law to make the grand jury returning the indictment a legal grand jury? Since the defendant raises no question of the qualifications or the impartiality of the grand jurors, and relies solely on the objection that the order of the court did not comply with the provisions of section 3517, supra, we are of the opinion that there was a sufficient compliance with the law to make the grand jury a legal one. The motion of the defendant to quash the indictment on the ground that the grand jury was not drawn, impaneled, and sworn as provided by law was properly overruled.

The defendant next contends that the indictment is duplicitous, and that the court erred in not requiring the state to elect which offense they would seek a conviction upon. The charging part of the indictment reads as follows:

"That Mack Gravitt, in the county and state aforesaid, on the day and year aforesaid, did knowingly, willfully and unlawfully sell one drink of spirituous liquor, one drink of vinous liquor, one drink of malt liquor, one drink of fermented liquor and one drink of intoxicating liquor, to wit; one drink of corn whisky, to one G. W. Tucker, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state of Oklahoma."

Where the statute enumerates several acts disjunctively, which separately or together shall constitute the offense, the indictment, if it charges more than one of them, which it may do, and that, too, in the same court, should do so in the conjunctive. Adams v. State, 5 Okla.

Cr. 352, 114 Pac. 347; Hogan v. State, 42 Okla. Cr. 188, 275 Pac. 355.

The defendant next contends that the indictment is defective because it did not charge the price at which the liquor was sold. The gist of the offense is the sale of intoxicating liquor, and it is never necessary in an indictment to allege the price for which the liquor was sold. It is sufficient if the evidence offered by the state under a charge of sale shows that a consideration was paid. Fletcher v. State, 2 Okla. Cr. 300, 101 Pac. 599, 23 L. R. A. (N. S.) 581.

The evidence being sufficient to support the verdict of the jury, and the errors of law complained of not being fundamental, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.