**The GRAND JURY OF SEMINOLE COUNTY, Oklahoma, Appellant,**

v.

**Benny Max DYE, Clifford C. Ligon, and James L. Whitt, County Commissioners of Seminole County, and Paul Matthews, Seminole County Assessor, Appellees.**

**No. 49870.**

Supreme Court of Oklahoma.

Sept. 27, 1977.

Rehearing Denied Dec. 21, 1977.

**1202** 

Larry Derryberry, Atty. Gen. of Oklahoma, Robert L. McDonald, Asst. Atty. Gen., Oklahoma City, for appellant.

Andrew Wilcoxen, Muskogee, Richard S. Roberts, Wewoka, for appellee, Clifford L. Ligon.

Fred A. Gipson, Seminole, for appellee, James L. Whitt.

Gordon R. Melson, Ada, for appellee, Paul Matthews.

Charles Nesbitt, Oklahoma City, for appellee, Benny Max Dye.

BARNES, Justice:

Appellant, the Grand Jury of Seminole County, Oklahoma, represented by the Attorney General of the State of Oklahoma, brings this appeal from an adverse ruling of the Trial Court, which sustained a challenge to the validity of a Grand Jury in Seminole County and, accordingly, quashed accusations returned by that Grand Jury against the Appellees.

The pertinent facts are as hereinafter related. March 22, 1976, the Seminole County Court Clerk certified as sufficient a petition for the calling of a Grand Jury for the investigation of the office of District Attorney.

On March 23, 1976, District Judge Frank Seay issued an order directing that a panel of 60 names be drawn for a Grand Jury. Before the drawing began, at Judge Seay's direction, all persons were removed from the courtroom except the Court Clerk, Sheriff, and Reporter, and the door was locked.

District Attorney Powell then notified Assistant Attorney General Robert McDonald as to what had occurred. After the Assistant Attorney General talked to Judge Seay, Powell was readmitted to the courtroom and the door was unlocked. At that time several Commissioners and a reporter from the newspaper also entered the courtroom.

The jury panel in question was then drawn. Apparently, the Trial Judge anticipated that he would not be able to qualify 12 jurors from the original panel of 60 jurors, and in order not to be delayed in the selection of the Grand Jury in the event that the original panel of 60 jurors was exhausted without qualifying 12 jurors, he then drew a second panel of 60 jurors. The two jury lists were drawn and handled prior to impanelment on April 12, 1976, in the following manner: The jury wheel was cranked and the Court Clerk unlocked the right side of the wheel and the Sheriff unlocked the left side. Sixty names were drawn alternatively by the Court Clerk and Sheriff, who then sealed the names in an envelope. Then 60 more names were drawn and sealed in a second envelope. Lists were compiled in the numerical order in which the names were drawn from the jury wheel, which were placed in their respective separate envelopes, sealed, and signed.

The Court Clerk then prepared a new list which was in alphabetical order, and the numerical order list was discarded.

On April 12, 1976, all 120 persons were notified to be present. The names of the 60 jurors on the first list were placed in a box. All 60 jurors from list one were exhausted before the names of the 60 jurors from list two were placed in the box. A Grand Jury of 12 persons was completed before exhausting list two. Only 8 unused names remained from list two. The District Judge thanked them for their service and excused them, since the necessary 12 grand jurors had been selected.

After the Grand Jury went into session, it was discovered that one juror was not qualified to serve due to a former felony conviction. Judge Seay then ordered 30 names to be drawn. On April 13, 1976, a replacement juror was selected from list three in the same manner as before. The reconstituted Seminole County Grand Jury was reimpaneled on April 13, 1976.

After receiving evidence, the Grand Jury issued four accusations on May 7, 1976, against Appellees. A Motion to Quash the Accusations for Removal from Office was heard and sustained June 10, 1976. That Motion resulted in this appeal.

Appellant contends that 38 O.S.1975 Supp., § 21, governing the selection and summoning of prospective grand jury members, and 22 O.S.1971, § 329, regulating the replacement of disqualified jurors, were correctly followed and the Trial Judge erred in ruling that the formation procedures employed in the instant case were violative of either aforementioned statute. Therefore, it is argued that the order sustaining the Motion to Quash the Accusations to Remove County Commissioners Dye, Ligon, and Whitt, and Seminole County Assessor Matthews from office should be reversed and the petitions reinstated.

Appellees allege the following basic errors occurred during the selection process: (1) The jurors were not called to the jury box for voir dire questioning in the same order their names were drawn for summoning from the jury wheel; (2) the drawing of 120 names for grand jury service violated the mandatory provisions of § 21, supra; (3) when the disqualification of a grand juror was discovered, the vacancy was not filled in the manner required by 22 O.S.1971, § 329; (4) the drawing of the grand jury panel was not held in open court as required by 38 O.S.1971, § 21; (5) all proceedings of the Grand Jury were vitiated by the presence of an unauthorized person (Assistant Attorney General) in the grand jury room during its proceedings; and (6) the order of the Trial Court was proper for the reason that the Grand Jury included three persons not authorized by law to serve as jurors.

■ Appellees argue that it was an unwarranted deviation from 38 O.S.1975 Supp., § 21, to discard the original order in which the jurors' names were drawn from the jury wheel by compiling a second alphabetized list of names which were placed in a jury selection box on individual slips of paper, randomly drawn, and then recorded in the order they were chosen. Appellees contend this method created a new sequence of names which did not comport with the statutory requirements of 38 O.S. 1975 Supp., § 21, and resulted in a fatal defect. It is their position that § 21, supra, requires that "the veniremen be called forth for consideration of their service in the same order that they were drawn from the jury wheel . . ."

The pertinent portions of 38 O.S.1975 Supp., § 21, provide that the proper official:

". . . shall draw from the wheel containing the names of jurors, after the same has been well turned so that the cards therein are thoroughly mixed, one by one until the number of jurors for grand or petit jury service as directed by said judge are procured and shall record such names as they are drawn upon as many separate sheets of paper as there are weeks for such term or terms for which jurors will be required. The officers attending such drawing shall not divulge the name of any person that may be drawn as a juror to any person. *If a grand jury is ordered, the first names*

*drawn to the number stated in the judge's order, not to exceed sixty (60), shall be summoned as grand jurors, and the grand jury shall be empaneled from said persons . . .* " (Emphasis ours)

Although the statute requires that the names be recorded as they are drawn from the jury wheel and summoned from this list, there is no reference to the order in which they will actually be called to the jury box; the statute simply states that after the list is made and the jurors are summoned, the "grand jury shall be empaneled from said persons." Therefore, the method employed in the instant case does not violate § 21, supra, but is compatible with the broad language therein. The statute does not require the jurors to be called in the order their names were originally drawn. The procedure used comports with the procedure used in choosing petit jurors (see 22 O.S.1971, §§ 593 and 595), and is eminently fair to all parties.

Appellees argue the drawing of 120 names for grand jury service violated the mandatory provisions of 38 O.S.1971, § 21, which provides for the drawing of 60 names, and rely on *Highers v. State,* 337 P.2d 1112 (Okl.Cr.1959), and *Hammers v. State,* 337 P.2d 1097 (Okl.Cr.1959), to support their contention that it was error to call a second 60 juror panel before the original jury panel was exhausted.

Those cases are distinguishable from the case at bar because here both initial lists of jurors were in effect exhausted or excused before additional jurors were used. In those cases, the Judge testified that he selected the jurors he wanted from both lists, and it was held to be reversible error for the Judge to utilize names on a second list of potential jurors before exhausting the first list. Furthermore, in the instant case, there has been no claim that the presiding Judge was attempting to handpick the Grand Jury.

We note there has always been difficulty in knowing the number of prospective jurors required to obtain a grand jury. The problem is that when the original 60 is exhausted, if additional names have not previously been drawn and notified, there is substantial delay in going through the required procedure to complete the jury panel. Therefore, the Legislature provided that the Judge could draw additional names for completion of the grand jury. We do not agree with Appellees' interpretation of § 21, supra, that only after exhausting the first panel of 60 may the Court order a further drawing of names.

As previously stated, this would necessitate a recess and considerable delay in bringing in additional jurors. We do not see any way that drawing 60 additional names, which were not used until the original list was exhausted, could be prejudicial to anyone. Apparently, the Legislature anticipated this problem in 38 O.S.1971, § 21, where they gave the Court broad discretion to call additional jurors:

". . . or if, for any cause, the court, in its discretion, shall deem other jurors necessary."

Appellees also averred that it was error for the Judge presiding over the Grand Jury to summon 30 additional jurors to replace one panel member whose prior felony conviction rendered him ineligible to serve, rather than resorting to the eight jurors who remained unchosen from the general body of jurors previously summoned. The thrust of their argument was that 22 O.S.1971, § 329, which governs the discharge of a grand juror and the selection of a replacement, demands that the names of all jurors initially summoned be exhausted first before a new panel is called. We do not agree with this contention.

The eight surplus jurors were dismissed from further jury duty after the 12-member panel had been chosen. Thus, it was incumbent upon the Trial Judge to replace the disqualified juror in the manner provided by § 329, supra. We find that in such a contingency that § 329, supra, requires the Trial Judge to draw new names from the jury box in order to fill the vacancy. Section 329 provides:

"§ 329. Discharge of grand juror.

"A member of the grand jury may for ill health of himself or immediate family, or other cause rendering him unable to serve, be discharged before the term is ended or the labor of the grand jury completed; or if the judge becomes satisfied that any grand juror is wilfully refusing to discharge his duty, the court may order his discharge. In either event or in case of the death of one or more grand jurors, *as many names as the court may order shall be drawn from the jury box in the same manner the original grand jurors were drawn, and from the names so drawn there shall be summoned as many grand jurors as can be found and are able to attend as necessary, and if found they shall be summoned in the order in which their names were drawn from the box.* If the number be not thus obtained there shall be another drawing in the same manner. When a sufficient number so drawn appears to fill the panel, the grand jury shall in open court be reimpaneled, but subject to challenge and be charged and sworn in the same manner as when the grand jury was originally impaneled." (Emphasis ours)

 Appellees further argue that the drawing of the grand jury panel was not held in open court as required by 38 O.S. 1971, § 21, because the District Judge ordered all persons except the Sheriff, Court Clerk, and Court Reporter to leave the courtroom, forcibly ejected the District Attorney, and locked the door. Before commencing the actual drawing of the jury panel, the Judge remanded his order of privacy, unlocked the door, and permitted the public, including the District Attorney, to be present during the actual drawing of the jury panel. Thus, the end result in this case was that the actual drawing did occur in open court. We therefore find that the open court requirement of 38 O.S.1971, § 21, was complied with in this case.

Appellees next contend that the proceedings of the Grand Jury were vitiated by the presence of an unauthorized person in the grand jury room during its proceedings, i. e., the Assistant Attorney General. Appellees rely on 19 O.S.1971, § 215.9, which provides that in the event the District Attorney and his Assistants are disqualified to act in a particular matter, the Attorney General of Oklahoma shall appoint some attorney of the district to act in such matter, who shall be vested with all the powers of the duly elected or appointed District Attorney. Appellees further argue that the right of the Attorney General to participate in grand jury proceedings would extend, at most, only to circumstances where the District Attorney was disqualified to perform the duty imposed upon him by law, since in all investigations other than an inquiry into the office of District Attorney, the District Attorney is the only lawfully designated legal advisor to the Grand Jury.

 We note that here the petition for a grand jury was filed to investigate the office of District Attorney. We further find from our review herein that 19 O.S. 1971, § 215.9, supra, relied on by Appellees, does not deal with grand jury proceedings. Grand jury proceedings are covered by 22 O.S.1971, § 340, which provides:

"The grand jury may at all reasonable times ask the advice of the court or of the district attorney. * * * The district attorney, with or without a regularly appointed assistant district attorney individually or collectively, and where proper, the attorney general, or an assistant attorney general, may at all times appear before the grand jury for the purpose of giving information or advice relative to any matter cognizable before them and may interrogate witnesses before them whenever he thinks it necessary. * * * Provided further that neither the district attorney, nor an assistant district attorney, may be present or participate in his official capacity, as herein provided, during an investigation by the grand jury of the district attorney's office, or of any person officially associated with said office."

Therefore, we conclude that this was a proper case in which the Assistant Attorney General had the authority to be present in the grand jury room during its proceedings.

Appellees further argue that the Trial Judge properly quashed the Grand Jury because the panel included three persons not authorized by law to serve as jurors. Appellees rely on 38 O.S.1975 Supp., § 18(B), which specifies the source of names to comprise the list of qualified jurors, whose names could lawfully be included among those eligible for jury service. That section provides that not later than October 1, 1974, and each year thereafter, the Secretary of the County Election Board shall furnish for this purpose:

"A list of registered voters in the county as of the first day of January of that year . . .

\* \* \* \* \* \*

"All names and addresses of the persons so listed shall be used thereafter in the selection of juries."

Appellees then cite 26 O.S.1976 Supp., § 4–120(2), which they contend creates a mandatory duty to cancel the registration of any person who has not voted as required:

"No later than June 1 of the year following each statewide general election, the secretary of each county election board shall cancel the registration of any registered voter who has failed to vote in a statewide primary, runoff primary or general election during the immediately preceding two (2) calendar years . . ."

Appellees state the uncontroverted evidence demonstrates three of the twelve grand jurors were not persons authorized by law to serve on a grand jury by reason of their failure to vote in any statewide election within two years prior to June 1, 1975, and, therefore, could not serve on juries drawn in 1976.

We note that 38 O.S.1975 Supp., § 28, provides:

"A. All citizens of the United States, residing in this state, *having the qualifications of electors* of this state, who are of sound mind and discretion and of good moral character *are competent jurors to serve on all grand and petit juries within their counties;* \* \* \*" (Emphasis ours)

Appellees do not contend that the three persons chosen did not have "the qualifications of electors" and, therefore, we will presume that they did have these qualifications. See *Oklahomans for Modern Alcoholic Beverage Controls, Inc. v. Shelton,* 501 P.2d 1089 (Okl.1972), where we held that there was no requirement that petition circulators be registered voters and that there being no proof that the circulators were not qualified electors, the signatures challenged on that ground are valid.

Appellees cite *Hammers* and *Highers, supra,* for the proposition that substantial compliance with 38 O.S.1975 Supp., § 21, is not adequate to prevent a grand jury indictment from being set aside. They base this assertion on the following language from *Viers v. State,* 10 Okl.Cr. 28, 134 P. 80 (1913), quoted therein:

" \* \* \* The grand jury must be selected, drawn, and impaneled as provided by law. The grand jury does not by our law consist of 12 men congregated by the mere order of the court. It consists of 12 men selected, drawn, and impaneled according to the requirements of the law, and *if the law is not followed,* it is an incompetent grand jury. \* \* \*" (Emphasis ours)

We think the holdings in *Highers* and *Hammers, supra,* are in accord with the rule that substantial compliance is sufficient to meet the directory provisions of the selection statutes. The Court in those cases did not ignore § 29 and proclaim it no longer viable, but merely concluded that the deviations from the statute in that instance were so gross and prejudicial to the defendants' substantive rights that in that case the provisions would not save the grand jury. In those cases the purpose of the selection statute, i. e., to secure an unbiased jury from overreaching influence of State officials, had been destroyed. In the case at bar no evidence was presented by the Appellees indicating how any of their substantial rights were violated.

In *Stuart v. State,* 522 P.2d 288 (Okl.Cr. 1974), the grand jury panel was challenged

on the Court's failure to draw the jurors in open court, and that Court said:

"We feel that the procedure used below was in substantial compliance with the statutes for several reasons. First, it is our task to construe statutes liberally to effect the objects for which they were enacted. *Gravitt v. State,* 44 Okl.Cr. 45, 279 P. 968 (1929). *We must, accordingly, lend a liberal construction to the terms 'in open court' and 'substantial compliance' so as to give effect to the primary purposes of the jury drawing statutes. In our view, that purpose was to insure that jurors would be drawn fairly and impartially, in order that there could be no suspicion that the jurors had been secretly handpicked. Young v. State,* 41 Okl.Cr. 226, 271 P. 426 (1928). We see no . objection to allowing the public to observe the drawing from behind the railing in the spectator area of the courtroom as urged by defendant. But the fact that we approved just such a procedure in *Dowell v. State,* 96 Okl.Cr. 62, 248 P.2d 256 (1952), does not make it the exclusive means of achieving substantial compliance with the statutes. The fact that the drawing was done in good faith and in full view of the public negates any imputation of partiality or handpicking. We conclude, then, that the statutory requirement of substantial compliance was met. In the absence of a showing by defendant that any substantial right was violated, we must reject his first assignment of error." (Emphasis ours)

Thus, even if there was not strict compliance with the grand jury selection process, as long as there was substantial compliance the Appellees were not entitled to have the Seminole Grand Jury accusations negated. For these reasons, the Trial Court's action in sustaining the Motion to Quash must be overturned by this Court.

REVERSED.

HODGES, C. J., LAVENDER, V. C. J., and WILLIAMS, IRWIN, BERRY and SIMMS, JJ., concur.