**Jeff HOLT, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–16824.**

Court of Criminal Appeals of Oklahoma.

Jan. 31, 1973.

Rehearing Denied Feb. 16, 1973.

562

Mac Oyler and John R. Smith, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Presiding Judge:

The appellant, Jeff Holt, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County for the offense of Robbery With Firearms; his punishment was fixed at fifteen (15) years imprisonment, and from that judgment and sentence, a timely appeal has been perfected to this Court.

Since counsel has raised no questions as to the sufficiency of the evidence, suffice it to say that on the 24th day of October, 1970, Mr. Vernon Hess, the prosecuting witness, was working in the capacity of service station attendant at the J. C. Walker Conoco Service Station in the 1700 Block of Northwest Classen Boulevard, Oklahoma City, Oklahoma. While he was on duty on the 9:00 p. m. to 7:00 a. m. work shift, and at approximately 5:25 a. m. on this morning, the defendant drove into the station in what Hess recalled as a two-tone green 1970 or 1971 Pontiac bearing Texas license tags. The defendant tendered a foreign oil company credit card prior to purchase, with Hess refusing acceptance. After a brief conversation, the defendant made a fifty-cent gasoline purchase. After the purchase, the defendant followed Hess into the service station office where he remained for approximately twenty to thirty minutes under the pretense of waiting to meet with a friend at the Spanish Village Apartments. As Hess readied himself for a check of the morning gasoline pump readings, the defendant brandished a gun and stated, "If you're gonna do that, you might as well open the register." (Tr. 90) Hess turned and observed in the defendant's hand, a .32-caliber automatic which he stated looked the same as State's Exhibit Number 1. Hess opened the register and delivered all the bills therein contained to the defendant with the defendant ultimately receiving Fifty-three Dollars and Seventy-four Cents ($53.74). Immediately thereafter, Hess was instructed to walk to the grease and

wash bay area in the rear of the service station. The defendant informed Hess that it was necessary to knock him unconscious as he might have a chance to see his license tag number. After a short conversation, with Hess' assuring the defendant that he did not know his license number, the defendant left the station. As he left, he removed coins from the register and published the threat that if Hess turned he would kill him, and if he didn't kill him his friends would. Hess telephoned the police. Upon their arrival, he described the defendant as approximately six feet in height, wearing black gloves, a blue three-quarter length coat, blue jeans, two-toned brown western boots, and horn rimmed glasses. He described the vehicle as a two-toned green 1970 or 1971 Pontiac bearing Texas license tags prefixed with the letters N.M. He also told the interviewing officers that he conversed with the person who robbed him. During the course of these conversations, this person told him that he was waiting to see a friend at the Spanish Village Apartments.

Detectives Robert Graham Hervey, Jim R. Blair and Fred Weed testified at trial about the details of the defendant's apprehension and certain admissions made while he was in their custody. Hervey and Blair testified that on October 28, 1970, accompanied by Detective Donald Ray Schimmels and a person whose name is unknown, they waited for the defendant in his apartment, Apartment 102 of the Spanish Village Apartments located on Northwest 39th Street, Oklahoma City, Oklahoma. At approximately 2:30 p. m., the defendant entered. He was placed under arrest, his hands were cuffed in front of him and he was then given his constitutional rights. In response to questioning, the defendant informed the officers that the gun he had used was in the trunk of his car. Hervey's testimony revealed the defendant took them to the vehicle, opened the trunk and told Hervey where the gun was located. Hervey removed a .32-caliber Browning automatic, marked at trial as State's Ex-

hibit Number 1, from beneath the tail light brace inside of the trunk of this vehicle. The vehicle was a vinyl over green 1970 Buick. While the defendant was being transported to the police station, Hervey further testified that the defendant stated "when he had robbed the man at 16th and Classen at the Conoco Station that he had a real strong urge to shoot the man, and that it took all of his will power to keep from shooting him." (Tr. 106)

Blair testified that he was present during the arrest and finding of State's Exhibit Number 1. He further testified that the mentioned vehicle had a Texas tag with the number of N.W.P.–166. Blair also stated he interviewed with the defendant at approximately 3:00 p. m. on the date of the arrest and the defendant advised him that he thought he was helping another person commit the robbery. (Tr. 111)

Detective Weed testified that on October 29, 1970, in an early morning follow-up interview, the defendant stated that he wanted to clear the matter up, stating "he had no good reason for committing it and he thought his friends had done him dirty and possibly this way he could get back at them." He further stated, "he had intentions of killing the service station operator at the time and he had talked himself out of this part of the robbery."

Thereafter, the State rested, and the defense rested without presenting evidence.

In the defendant's first proposition, two assignments of error are raised. The first assignment of error challenges the propriety of the magistrate declining to rule on a Motion to Suppress at Preliminary Hearing. The Preliminary Hearing initiated on December 3, 1970, at the defendant's request and by order of the court, was continued to December 17, 1970 for additional evidence. The Preliminary Hearing was thoroughly conducted with the defense permitted a reasonable inspection of all evidence surrounding the offense and possible constitutional issues. At the conclusion of

the evidence, the examining magistrate declined to rule on the defendant's Motion to Suppress and bound the defendant over to the district court for trial.

■■ The authority of Hyde v. Hutchison, Okl.Cr., 483 P.2d 766 (1971), is submitted by defense counsel suggesting that the magistrate's handling of the Preliminary Hearing Motion to Suppress was error. In *Hyde*, supra, we note the Court's Order granting a Writ of Mandamus and Prohibition contained a Mandate directing the magistrate presiding over the Preliminary Hearing to entertain the petitioner's evidence and witnesses in support of their Motion to Suppress. We note that at the Preliminary Hearing, in the case at bar, the defendant was not deprived of submitting evidence nor of obtaining a full inspection of the evidence regarding the search and seizure. Prior to trial, the district court trial judge conducted a lengthy hearing on the defendant's Motion to Suppress, determined the evidence admissible, and overruled the defendant's motion. We can see no reason for remanding this case for an additional Preliminary Hearing, although it goes without saying that a magistrate has the duty to rule on questions of law properly before him, and to decline to do so is to decline to fulfill the duty of his office. There has been no prejudice to the defendant as his contention was conscientiously reviewed by the trial court and any error in the conduct of the magistrate is a harmless one.

The second assignment of error in the first proposition deals with the question of whether there was reasonable cause to affect an arrest of the accused. In response to counsel's argument, a summary of the evidence received at the pre-trial Motion to Suppress is in order.

Detective Fred Weed testified at this Motion that he had personal knowledge that the robbery in the instant case had been committed. He testified that on the 26th of October 1970 he interviewed with the prosecuting witness regarding the details of the incident. In that interview, he received a description of the defendant and a description of the vehicle he was driving, which included make, model and a partial license tag description. On October 28, 1970, Detective Weed, apparently involved in the arrest of several individuals for another offense, was at the Spanish Village Apartments located on Northwest 39th Street, Oklahoma City, Oklahoma. At this time, he was accompanied by his partner, Aaron Clovis, and Detectives Donald Ray Schimmels, Robert Graham Hervey and Jim R. Blair. Shortly after their arrival, Detectives Hervey and Blair transported prisoners to the police station.

Detective Weed further testified that while he was at this location he interviewed with Mr. Rick Ramus at Apartment 102 of the complex. Ramus informed Weed that he resided at Apartment 102 with Mr. Jeff Holt, the defendant in this action. Ramus stated that on a recent but unspecified date, the defendant arrived at their apartment and told him that he had committed a robbery. Ramus further stated that the defendant, at the time he entered the apartment, was carrying his automobile license tags. He stated they were Texas tags, and upon further questioning by Weed, stated that the defendant drove a vinyl over green 1970 Buick. After Blair and Hervey were summoned back to the scene, Weed instructed Hervey, Blair and Schimmels that Holt was a suspect in an armed robbery. They were further instructed that Holt might be armed and that he was to arrive at the apartment early that afternoon. They were to apprehend Holt and take him into custody.

Detectives Hervey, Blair and Schimmels testified they were present and accompanied by an unknown person when the defendant arrived at the apartment at approximately 2:30 p. m. on the mentioned date. Hervey testified that based on the information received from Weed, they waited in the defendant's apartment until

he arrived. Upon his arrival, Hervey placed the defendant under arrest for armed robbery and advised him of his constitutional rights. As a result of the arrest, the defendant made certain admissions and informed the officers of the location of the firearm used in the robbery. The evidence also showed that none of the officers possessed an arrest warrant at the time of the arrest.

Counsel's sole contention on appeal is whether there was sufficient corroboration of the information given by the informant, not established to be reliable, to establish legally sufficient reasonable cause to affect an arrest of the accused. His contention is that it is not sufficiently corroborated and all derivative evidence, the firearm and admissions, should be excluded.

■ ■ It is well settled that an agent may rely upon his fellow officers to supply the information which forms the basis of the arresting officer's reasonable grounds for believing that the law is being violated. Holt v. United States, 404 F.2d 914 (10th Cir. 1968). It follows an officer may rely on a fellow officer's information in the formation of reasonable cause that an individual is a violator in a previous offense. Since the arresting officers may rely on Weed's information, the question then becomes whether Weed's information was sufficient in corroborating the tip rendering it reliable. We feel the statements made to the initial interviewing officer by the prosecuting witness coupled with the fact that Weed interviewed with this witness prior to his interview with Ramus and the information received from Ramus substantially complied with that received from the prosecuting witness, is sufficient corroboration of the informant's statement to render it reliable and establish reasonable cause for affecting the arrest of the defendant. See Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1969).

■ The defendant's second proposition asserts that the record fails to show by clear and convincing evidence that the defendant's in-court identifications were based upon observations other than the lineup. At the Preliminary Hearing and hearing conducted outside the jury's presence, the prosecuting witness testified he attended two lineups on separate days. At the first lineup, he identified no one. At the second, he identified the defendant. He testified that at the time of the robbery he talked with, and observed, the defendant under good lighting conditions for approximately twenty-five to thirty minutes. He stated his identification of the defendant was based solely upon his observations at the time of the robbery and not who he observed at the lineup. After carefully reviewing the record, we are convinced the prosecuting witness did not rely on the pre-trial identification to identify the defendant at the time of trial and that the in-court identifications are based on the defendant's appearance at the scene of the crime. See Carter v. State, Okl.Cr., 478 P.2d 912 (1970).

■ In the third proposition, the first assignment of error is that a statement made by Officer Blair at trial constituted an evidentiary harpoon. That statement reads as follows:

"[By Mr. Swartz] Q. Did he go into any detail about how he committed the robbery and what his part in it was?

"A. No, sir. He went on and advised me that he thought he was helping another person commit a robbery—what I think possibly was a burglary—but he didn't complete it. No, I didn't—

"MR. OYLER: Your Honor, may we approach the Bench?" (Tr. 111)

To this assertion, the State responds contending that the statement was inadvertent without the intent of prejudicing the jury. We have carefully studied the hearing conducted outside the presence of the jury and find this a reasonable contention. Furthermore, the State responds to defense

counsel's argument and authority contending the jury could not have concluded the witness was referring to the commission of a separate offense, as the interruption of counsel resulted in an incoherence in the statement which made it unintelligible. We would have to indulge in speculation to ascertain the jury's perception of the statement. The only available source of determining whether or not the jury was prejudiced by such a statement is the jury's verdict and the reasonableness of the punishment imposed therein. Noting the aggravated nature of the facts coupled with the fact that at the time this case was tried it was a capital offense, further adding that the State requested one hundred and one years as punishment to which the jury responded with a fifteen-year sentence, we feel there is no manifestation in the jury's verdict that the jury imposed the punishment on the basis of passion nor prejudice. Therefore, we feel this is not grounds for modification. See Washington v. State, Okl.Cr., 426 P.2d 372 (1967).

█ Counsel's second assignment of error in Proposition Number 3 alleges a discrepancy between the prosecuting witness' testimony at Preliminary Hearing and trial. This discrepancy is based on the assertion that at Preliminary no evidence was given on the subject of the defendant threatening the prosecuting witness at the time of the robbery. This threat was part of the proof at trial. A careful review of the record shows that at the Preliminary Hearing there was no questioning by State's counsel on this subject. In comparing the two transcripts, in light of counsel's questioning, we find one silent and the other speaking. This factual situation does not create a discrepancy in testimony. To establish a policy of modification of sentences under circumstances similar to the case at bar, would be contrary to the weight of authority regarding preliminary hearings. It would have the effect of requiring the State to produce all of its evidence at preliminary hearing and have the court invade the province of the jury and reassess punishment in each instance where more evidence is produced at trial than at preliminary. The rule is well settled that the State need not produce more evidence at preliminary hearing than that required to show an offense committed and that there is reasonable grounds to believe the defendant committed the same. The quantity of evidence required is less than that of trial. Snow v. State, Okl.Cr., 453 P.2d 274 (1969). We, therefore, find this contention to be without merit.

█ The fourth proposition assigns as error the court's denying a hearing out of the presence of the jury on the issue of the voluntariness of the defendant's admissions. In this regard, we need only point out that prior to trial the defendant was granted a lengthy hearing on his Motion to Suppress. The same witnesses that testified at this motion, testified at trial. All statements made at trial were revealed in the Motion to Suppress hearing. The hearing record establishes all the proper predicates for the admissibility of this evidence. The record amply supports the fact that the statements were voluntary. It is in the descretion of the trial judge to grant a hearing outside the presence of the jury at trial on a question of law when it is obvious an additional hearing would reveal the same evidence as was received at a pretrial hearing. Bond v. United States, 397 F.2d 162 (10th Cir. 1968). Since the pretrial motion established the constitutional requirements of voluntariness of the defendant's admissions, the court did not abuse its discretion in denying additional hearings.

█ In this proposition, counsel further argues that the court erred in not, of its own volition, giving a Miranda instruction charging the jury with determining the voluntariness of the defendant's admissions. In the case of Davis v. State, Okl.Cr., 437 P.2d 271 (1968), the Court stated that if, at a Motion to Suppress

Hearing, the judge finds that the confession was voluntary, he must admit it for the jury's consideration and it then becomes the duty of the jury, *if the evidence is conflicting,* to determine the voluntary nature of the confession. The Court in this authority made the further observation in affirming the case, that no evidence was submitted that the defendant was coerced or threatened and that as a result of coercion or threat, he involuntarily confessed. The facts in the case at bar are virtually the same. There is no evidence of coercion submitted by the defense. Consequently, there is no question of fact as to voluntariness upon which the jury should be instructed. Since there was no evidence presented to the jury as to the involuntariness of the confessions, and since counsel did not object to the court's instructions at the time of trial, we find this proposition to be without merit.

In the fifth proposition, counsel contends that arguments of counsel made an unmistakable reference to the pardon and parole system, thereby prejudicing the jury in their assessment of punishment. We note, in reviewing the portion of the record that counsel refers to, that there is no use of the words pardon and parole, nor is there a specific reference dealing with any agencies involved in the mitigation of a punishment imposed by jury. The substance of this argument is subject to multiple interpretations. This comment, in light of the evidence presented, is more reasonably construed as referring to the evidence. Since the remarks of the prosecutor, in his argument, will be considered and construed in reference to the evidence, we find this proposition to be wholly without merit. Hill v. State, Okl.Cr., 443 P.2d 126 (1968). To assume that jurors, unschooled in the rules of criminal law and procedure, would interpret this argument as a reference to pardon and parole procedures, would be unwarranted. The judgment and sentence is, accordingly, affirmed.

BUSSEY and BRETT, JJ., concur.