2008 OK CR 15

**STATE of Oklahoma, Appellant**

v.

**Donald R. HALL, Michael Ray Hall, Leroy James Patton, Eldon W. McCumber, Michael S. Chaloner, William Sparks and Kenneth L. Doughty [1], Appellees.**

No. S–2007–19.[2]

Court of Criminal Appeals of Oklahoma.

May 23, 2008.

1. The name of Appellee Kenneth L. Doughty was omitted from the caption of the State's Brief in Support of Petition of Error. Based upon a review of the record, his case is part of this appeal and the omission of his name appears to have been only a scrivener's error.

2. The following appellate cases were consolidated into the current appeal under Case No. S–2007–19: *State v. James Leroy Patton*, S–2007–20; *State v. Donald R. Hall*, S–2007–21, S–2007–22 and S–2007–106; *State v. Michael Ray Hall*, S–2007–23; *State v. Eldon W. McCumber, Donald Hall, Michael Ray Hall, James Leroy Patton, Kenneth L. Doughty, Michael S. Chaloner and William Sparks*, S–2007–107.

W.A. Drew Edmondson, Attorney General, Charles Rogers, Lynn C. Rogers, Assistant Attorneys General, Oklahoma City, OK, Counsel for the State in district court and on appeal.

Mack Martin, Oklahoma City, OK, Counsel for Appellees McCumber, Sparks and Doughty in district court and on appeal.

Stephen Jones, Brooke A. Tebow, Oklahoma City, OK, Counsel for Appellee Patton in district court and on appeal.

Garvin Isaacs, Oklahoma City, OK, Counsel for Appellee Chaloner in district court and on appeal.

Chris Eulberg, Oklahoma City, OK, Counsel for Appellees Donald Hall and Michael Hall in district court and on appeal.

### OPINION

LUMPKIN, Presiding Judge.

¶ 1 On June 22, 2006, Indictments were returned by the Tenth MultiCounty Grand Jury against Appellees Eldon W. McCumber, Michael S. Chaloner, William Sparks and Kenneth L. Doughty filed in the District Court of Oklahoma County, Case No., CF–2006–3998. The Indictments charged Appellees with one count of Conspiracy Against the State (21 O.S.2001, § 424) and one count of Embezzlement by Public Officer (21 O.S. 2001, § 341).

¶ 2 Indictments were also returned against Leroy James Patton, Donald R. Hall and Michael Ray Hall and filed in the District Court of Oklahoma County as Case Nos. CF–2006–3999, CF–2006–4000 and CF–2006–4002, charging one count of Conspiracy Against the State (21 O.S.2001, § 424) and one count of Embezzlement by Public Officer (21 O.S.2001, § 341) based on the same set of facts as in the cases against the other Appellees. Appellee Donald Hall was also charged separately by Indictment with Obtaining Property of Valuable Thing of Value Exceeding $500.00 by False Pretenses (21 O.S.2001, §§ 1541.1 & 1541.2), Case No. CF–2006–4001.

¶ 3 Initial appearances were made by all Appellees on June 22, 2006. Subsequently, applications for preliminary hearing were filed by Appellees and preliminary hearing was set for January 3, 2007, before the Honorable Roma McElwee, Special Judge, sitting as preliminary hearing magistrate. On September 26, 2006, the State filed a *Motion to Dismiss Indictment in Favor of Prosecution by Information,* in each case and moved to file felony Informations in Oklahoma County District Court, Case No. CF–2006–3998, charging all Appellees previously charged by separate Indictments in Case Nos. CF–2006–3998, CF–2006–3999, CF–2006–4000 & CF–2006–4002. The State also filed an Information in Case No. CF–2006–4001 charging Appellee Donald Hall with the same offense previously charged by Indictment (Obtaining Property of Valuable Thing of Value Exceeding $500.00 by False Pretenses). Copies of the felony Informations and copies of the *Motion to Dismiss in favor of Prosecution by Information* were taken to Judge McElwee on September 26, 2006. Judge McElwee did not rule on the State's motion.

¶ 4 On November 14, 2006, Appellees McCumber and Sparks filed a *Motion to Quash Information and Suppress any Evidence Obtained Pursuant to Multicounty Grand Jury.* The other Appellees subsequently joined in the motion. The motion alleged that the presence of two alternate grand jurors in the grand jury room while evidence was being taken was in direct violation of article II, § 18 of the Oklahoma Constitution and 22 O.S.2001, § 340(C). Appellees alleged that as a result of the constitutional and statutory violations, prejudice was presumed and the court must quash the Indictments and Informations along with all evidence elicited from the faulty grand jury. The State filed written responses to the motion.

¶ 5 On November 21, 2006, Appellee Patton filed a *Motion for Release of Information Concerning the Composition of the Grand Jury.* In the motion it was argued that because the grand jury was convened in violation of state constitutional and statutory provisions (art. II, § 18, and 22 O.S.2001, § 340), the evidence presented to the grand jury could not furnish the basis for the Information and/or for a finding of probable cause at the preliminary hearing. An evidentiary hearing on the motion was set for November 28, 2006 and continued to January 3, 2007.

¶ 6 Meanwhile, on December 8, 2006, a hearing was held before the Honorable Bryan Dixon, District Judge and Presiding

Judge of the Tenth MultiCounty Grand Jury, at which time Judge Dixon verbally asked the parties if they could enter into a mutually agreeable written stipulation as to the use of alternates in the grand jury process and their presence or absence at various stages of the grand jury process, in an effort to alleviate the need for discovery on the issue. The joint stipulation was as follows:

1. Except as noted herein, twelve (12) regular grand jurors and two (2) alternate grand jurors were always present in the Grand Jury room during the presentation of testimony and evidence concerning the investigation of the Hinton Economic Development Authority "HEDA" and the above-named defendants. This would include the presentation of testimony and evidence taken on February 22, 2006, March 21, 2006, April 18, 2006, May 23, 2006, and May 24, 2006 and further includes the following testifying witnesses: Wesley Edens, David Fenton, Ian Purtle, Eldon McCumber, Michael Chaloner, Kenneth Doughty, Michael Hall, Bonnie Winsett, Leroy Patton and Donald Hall.

2. On May 23, 2006, during Leroy Patton's testimony, one (1) of the twelve (12) regular grand jurors left the Grand Jury room twenty (20) minutes early and did not return that day. Following Leroy Patton's testimony, this one (1) regular grand jury member also remained absent for that portion of Donald Hall's testimony that occurred on the same day which commenced at 5:20 p.m., and consisted only of questions regarding Mr. Hall's name, driver's license number, his current telephone number and his willingness to defer his testimony until the following day. On May 24, 2006, this one (1) regular grand juror was present for the remainder of Donald Hall's testimony.

3. Alternate grand jurors participated in the grand jury proceedings by asking questions of the testifying witnesses.

(O.R.194–196).

¶ 7 On January 3, 2007, a hearing was held before Judge McElwee on Appellees' motions to Quash the Indictments, Informations, and evidence presented to the grand jury. After hearing arguments, Judge McElwee granted the defense motions and quashed all evidence presented to the grand jury as inadmissible at the preliminary hearing. She also quashed the Indictments and Informations finding in part that alternate grand jurors should not have been present during evidentiary proceedings of the grand jury and the grand jury was therefore tainted by their presence, and found the Informations were not correctly filed. Although Judge McElwee specifically did not find 38 O.S.2001, § 21 unconstitutional, she was unable to "harmonize" the language of § 21, which expressly authorizes the selection and attendance by alternates at all functions of the grand jury, except for the deliberations of the grand jury, with art. II, § 18 and 22 O.S.2001, § 340.

¶ 8 The State immediately gave oral notice of intent to appeal and written *Applications to Appeal the Adverse Ruling of the Magistrate* were filed on January 4, 2007, in Case Nos. CF–2006–3998 & CF–2006–4001. The application was assigned to the Honorable Virgil Black, District Judge, acting as reviewing judge.

¶ 9 Judge Black held a scheduled hearing on January 19, 2007, and later filed written findings of fact and conclusions of law. He found the magistrate erred in quashing the Informations and sustained the State's application to that extent. He also found the magistrate erred to the extent her order applied the exclusionary rule to evidence "not discovered" by the grand jury. Judge Black declined to rule on whether or not the magistrate erred by quashing evidence "discovered" by the grand jury, stating that since the State had initiated an appeal that question was not before him and he should defer ruling to the Court of Criminal Appeals. The matter was remanded to the magistrate for proceedings on the State's Informations. To date, no Preliminary Hearing has been held in these cases.

¶ 10 Judge Black's ruling left undisturbed the magistrate's decision quashing the State's evidence, making it unavailable for

use at the remanded preliminary hearing. On January 24, 2007, the State filed written notices of intent to appeal that portion of Judge Black's ruling not overturning the quashing of evidence "discovered" by the grand jury.

¶ 11 Appeals of the adverse ruling of the magistrate quashing all relevant grand jury evidence in Case Nos. CF–2006–3998 & CF–2006–4001, which was sustained in part and overruled in part by Judge Black, were filed with this Court, Case Nos. S–2007–106 & 107, pursuant to 22 O.S.2001, § 1089.7. Written Notices of Intent to Appeal (the quashing of the Informations, etc.) were timely filed in the District Court and with this Court pursuant to 22 O.S.Supp.2002, § 1053(1) & (5) and *State v. Young*, 1999 OK CR 14, 989 P.2d 949 (State must appeal adverse rulings of magistrates in preliminary hearing proceedings upon an Indictment pursuant to 22 O.S.2001, § 1053). At the State's request, the appeals in all of the above cases were consolidated on March 28, 2007, under this Court's Case No. S–2007–19 with cross-reference to the other above mentioned appellate cases.[3]

¶ 12 The State of Oklahoma raises the following propositions of error in support of this appeal:

I. The Magistrate erred by suppressing all evidence received by the Grand Jury and the reviewing judge erred by not fully setting aside the order of the Magistrate quashing all evidence. A. Quashing evidence before the Grand Jury because alternate grand jurors were present was error since these persons are authorized by law to be present during evidentiary proceedings of a grand jury; B. Evidence was improperly quashed from use in this case on the basis of a short absence of one regular juror; C. Questioning of witnesses by alternate jurors is not prohibited by any provision of law and did not constitute legal cause for quashing all evidence received by the grand jury; D. the reviewing judge erred by effectively sustaining in part the magistrate's order quashing the

State's evidence relevant to the Informations.

II. The Preliminary Hearing Magistrate had no legal authority to quash an Indictment.

III. The Preliminary Hearing Magistrate had no authority to dismiss charges contained in the Indictments without holding a probable cause hearing.

¶ 13 After a thorough consideration of these propositions and the entire record before us on appeal including the original record, transcripts, and briefs of the parties, we find the following.

¶ 14 In Proposition I, the State argues the presence of alternate jurors in the grand jury proceedings during the reception of evidence is expressly authorized by 38 O.S.Supp.2004, § 21, which is both constitutional and enforceable. Therefore, according to the State, the magistrate's ruling that § 21 cannot be "harmonized" with applicable constitutional and statutory provisions is plainly erroneous. In a joint response brief, Appellees argue the presence of alternate grand jurors in the grand jury room while evidence is being taken is in direct violation of art. II, § 18 and 22 O.S.2001, § 340 as neither provision states that a grand jury shall be composed of 12 persons plus 2 alternates. Appellees argue that any attempt to read into the statutes an exception for alternates is not in harmony with the spirit of the Constitution and rests upon the illogical comparison between the grand jury and the petit jury.

¶ 15 Article II, § 18, is the only provision in the Oklahoma Constitution addressing grand juries. Section 18 provides in pertinent part:

A grand jury shall be composed of twelve (12) persons, any nine (9) of whom concurring may find an indictment or true bill.... All other provisions of the Constitution or the laws of this state in conflict with the provisions of this constitutional amendment are hereby expressly repealed.[4]

---

**3.** The State's appellate brief was filed on June 11, 2007. The Joint Response Brief of Appellees was

filed on September 10, 2007. Oral argument was held on March 11, 2008.

**4.** The "repealer" language contained in the last

¶ 16 Section 18 mandates that a "grand jury shall be composed of twelve (12) persons, any nine (9) of whom concurring may find an indictment or true bill." The provisions of Section 18 fixing the number of grand jurors and the number of grand jurors required to concur in an indictment are self-executing and mandatory. *Movants to Quash Multicounty Grand Jury Subpoena v. Dixon*, 2008 OK 36, ¶ 23, 184 P.3d 546. "However, the fact that portions of a constitutional provision are self-executing does not mean that the entire provision is self-executing." *Id.*[5] Supplemental legislation is permissible as long as the supplemental legislation does not alter or limit the powers or attributes of a grand jury as conferred by the Constitution. *See State v. Bezdicek*, 2002 OK CR 28, ¶ 23, 53 P.3d 917, 918, *citing Movants to Quash Multicounty Grand Jury Subpoenas v. Powers*, 1992 OK 142, ¶ 3, 839 P.2d 655, 656; *see also State ex. rel. Caldwell v. Hooker*, 1908 OK 244, ¶ 6, 22 Okla. 712, 98 P. 964 ("[i]n cases where a provision is self-executing, legislation may still be desirable, by way of providing a more specific and, convenient remedy and facilitating the carrying into effect or execution of the rights secured, making every step definite, and safeguarding the same so as to prevent abuses. Such legislation, however, must be in harmony with the spirit of the Constitution, and its object to further the exercise of constitutional right and make it more available, and such laws must not curtail the rights reserved, or exceed the limitations specified.")

¶ 17 The Constitution itself allows this supplemental legislation. "The Legislature shall pass such laws as are necessary for carrying into effect the provisions of this Constitution." Okla. Const. art. V, § 45. "The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever." Okla. Const. art. V, § 36.

¶ 18 Section 18 does not address any issues relating to alternate grand jurors and it does not address who may be present in the grand jury room during the reception of evidence. However, as early as 1910, the Legislature interpreted the Constitution to allow the enactment of supplemental legislation to address essential details of the workings of a grand jury. *See* 22 O.S. §§ 311, 312–333, 335–343. Alternate grand jurors were specifically provided for in § 329, which states in pertinent part:

> A member of the grand jury may for ill health of himself or immediate family, or other cause rendering him unable to serve, be discharged before the term is ended or the labor of the grand jury completed; or, if the judge becomes satisfied that any grand juror is willfully refusing to discharge his duty, the court may order his discharge. In the event of the discharge or death of a grand juror, an alternate grand juror shall be appointed to fill the vacancy by the court. The appointment shall be made in the same order in which the alternate grand jurors were selected. If the number of grand jurors and alter-

sentence of § 18 was not in the original version of the state constitution. It was added by a 1971 amendment. *See Laws* 1971, pg. 1011, S.J.R. No. 23. The amendment also addressed the means of convening a grand jury. In Attorney General Opinion No. 81–265, the "repealer" language was determined to repeal existing laws concerning when a grand jury may be convened. *See also* Danny M. Adkinson and Lisa McNair Palmer, *The Oklahoma State Constitution A Reference Guide*, pg. 40 (2001).

**5.** In *Movants to Quash Multicounty Grand Jury Subpoena v. Dixon*, 2008 OK 36, ¶ 23, 184 P.3d 546, the petitioners relied on this Court's statement in *State v. Bezdicek*, 2002 OK CR 28, ¶ 23, 53 P.3d 917, to argue that the Legislature cannot

enact legislation to "extend or alter" the effect of Section 18. The Oklahoma Supreme Court found:

> This assertion results from an overly broad reading of this Court's statement in [*Movants to Quash Grand Jury Subpoenas v.] Powers*, where we concluded only that article 2, sections 18 and 19 secured "inviolate the right to trial by jury, [and] the number, unanimity, and impartiality of jurors." 1992 OK 142, ¶ 3, 839 P.2d at 656. "[T]hese two constitutional provisions [are] self executing and mandatory *in these respects. Id.*"

2008 OK 36 ¶ 23, 184 P.3d 546 (emphasis in original).

nates becomes so depleted as to prevent the grand jury from functioning, as many names as the court may order shall be drawn from the jury box in the same manner the original grand jurors and alternates were drawn, and from the names so drawn there shall be summoned as many grand jurors and alternates as can be found and are able to attend as necessary, . . .

Title 22 O.S. § 340(C) provides who may present in the grand jury room:

No other person is permitted to be present during sessions of the grand jury except the members of the grand jury, the witness actually under examination, and one attorney representing such witness, except that an interpreter, when necessary, may be present during the interrogation of a witness; provided that, no person, except the members of the grand jury, shall be permitted to be present during the expression of juror opinions or the giving of votes upon any matter before the grand jury. . . .

¶ 19 The current version of § 340(C) is the result of several amendments. In 1941, the Legislature expanded the list of who may be in the grand jury room to interpreters. *See also* 22 O.S.2001, § 344 (providing for the appointment and compensation of an interpreter to assist a witness before the grand jury). The 1967 amendment added court reporters, and the 1974 amendment allowed an attorney of a witness to appear in the grand jury room with the witness during testimony.

¶ 20 Legislation pertaining to the selection of grand jurors is found in title 38. Specifically, 38 O.S.Supp.2004, § 21 provides in pertinent part:

If a grand jury is ordered, the number stated in the judge's order, not to exceed one hundred, shall be summoned as grand jurors, and the grand jury shall be impaneled from said persons. The judge of the district court shall order the court clerk or one of his or her deputies to order the stated number of jurors from the Administrative Director of the Courts. In addition to the twelve (12) grand jurors to be impaneled, three additional persons shall be selected as alternate grand jurors. The alternate grand jurors shall attend all functions of the grand jury during its term and shall be subject to all laws governing grand jurors. Provided that, no alternate juror shall participate in any deliberations of the grand jury until appointed to fill a vacancy. . . .

¶ 21 The above provisions are made applicable to multicounty grand juries by 22 O.S. 2001, § 350 to the extent they do not conflict with the provisions of the MultiCounty Grand Jury Act.

¶ 22 As this shows, through the years the Legislature has enacted several provisions to facilitate the actual workings of the grand jury. The first question before us now is whether one of these particular provisions, 38 O.S.Supp.2004, § 21, allowing for alternate grand jurors, is consistent with the provisions of art. II, § 18, providing "that a grand jury shall be composed of twelve (12) persons." This is a question of first impression for this Court.

¶ 23 "Every presumption must be indulged in favor of the constitutionality of an act of the Legislature, and it is the duty of the courts, whenever possible, to harmonize acts of the Legislature with the Constitution." *State v. Pratt,* 1991 OK CR 95, ¶ 10, 816 P.2d 1149, 1151, *overruled on other grounds, Pitts v. State,* 2003 OK CR 21, 78 P.3d 551; *see also State v. Howerton,* 2002 OK CR 17, ¶ 16, 46 P.3d 154, 157. Statutes are to be liberally construed "with a view to effect their objects and to promote justice." 25 O.S.2001, § 29. The constitutionality of a statute will be upheld unless it is "clearly, palpably, and plainly inconsistent with fundamental law." *Howerton,* 2002 OK CR 17, ¶ 16, 46 P.3d at 157–158 *quoting Rivas v. Parkland Manor,* 2000 OK 68, ¶ 8, 12 P.3d 452, 456. Parties alleging the unconstitutionality of a statute have the burden of proof. *Id.,* 2002 OK CR 17, ¶ 18, 46 P.3d at 158; *see also State v. Koo,* 1982 OK CR 93, ¶ 8, 647 P.2d 889, 891. Appellees have failed to meet their burden of proof.

¶ 24 Title 38 O.S.Supp.2004, § 21 does not expand nor limit the powers of the grand jury granted by art. II, § 18. Instead, § 21

addresses the procedural workings of the grand jury in order to ensure the grand jury can carry out its constitutional mandate.

¶ 25 Alternate jurors have been allowed in petit juries despite the fact they are not mentioned in the state constitution. The sole constitutional provision addressing the petit jury system is art. II, § 19. This section provides that in the jury trial of a civil case involving more than ten thousand dollars ($10,000.) and in felony criminal cases, "the jury shall consist of twelve (12) persons. All other juries shall consist of six (6) persons." As early as 1941, the Legislature recognized the need for alternate jurors in petit criminal juries and provided for their selection in Section 601a of title 22.

¶ 26 Comparison between the grand jury and the petit jury is appropriate despite their different functions. Alternate jurors do not participate in deliberations in either jury system until appointed or designated as a regular juror. Appellees argue that such is not clear in a grand jury as the term "deliberations" is not statutorily defined. Despite the absence of such a specific definition, 22 O.S. 2001, § 340(C) and 38 O.S.Supp.2004, § 21 clearly distinguish the gathering and reception of evidence from deliberations or decision making of the grand jury. *See* 38 O.S.Supp.2004, § 21 ("the alternate grand jurors shall attend all functions of the grand jury during its term and shall be subject to all laws governing grand jurors. Provided that, no alternate juror shall participate in any deliberations of the grand jury until appointed to fill a vacancy"); 22 O.S.2001, § 340(C) ("provided that, no person, except the members of the grand jury, shall be permitted to be present during the expression of juror opinions or the giving of votes upon any matter before the grand jury"). Appellees' argument that the "deliberations" were ongoing because there was no presiding judge to caution the alternates or regular grand jurors from deliberating during breaks and the alternates were free to influence the deliberation process by questioning witnesses is pure speculation, and absent some showing of actual prejudice, it is not a sufficient basis upon which to strike down § 21.

¶ 27 Further, the presence of alternates in both grand juries and petit juries allows for the presentation of evidence and return of a decision despite the fact an original juror is unable to fulfill their duty and render a decision in the case. The use of alternates protects the rights of the accused in that it prevents delays when a regular grand juror is absent. Otherwise, the grand jury could be put in the position of having to "start over" or else experience long delays in replacing a regular juror. This could potentially deprive the accused of fast and fair access to the courts and the guarantee of due process.

¶ 28 Just as 22 O.S.2001, § 601a, providing for alternate jurors in petit criminal juries is presumed constitutional, so to is 38 O.S.Supp. 2004, § 21. The attendance of alternate grand jurors at all functions other than deliberations of the grand jury does not interfere in any way with the proper functioning of a grand jury. The service of alternate grand jurors enhances the grand jury process. Indeed, to read art. II, § 18 as restricting the grand jury to only 12 members and no alternates is an unnecessarily narrow and impractical reading of the section. Accordingly, we find 38 O.S.Supp.2004, § 21 is constitutional and the presence of the alternate grand jurors in the grand jury room during the evidentiary phase proper. The magistrate's decision to the contrary was error.

¶ 29 The next question before us is whether 22 O.S.2001, § 340(C), with its limitation that "no other person is permitted to be present during sessions of the grand jury except the members of the grand jury," and 38 O.S.Supp.2004, § 21, providing for the selection of alternates and their attendance during all grand jury proceedings, can be read together and each given effect or are they mutually exclusive. It is a classic rule of statutory construction that statutes are to be construed to determine, if possible, the intent of the Legislature, reconciling provisions, rendering them consistent and giving intelligent effect to each. *Lozoya v. State,* 1996 OK CR 55, ¶¶ 17–18, 932 P.2d 22, 28–29. When there is a conflict between various statutes applying to the same situation, the more specific of the two governs. *Id.* This

is so even if the general statute was enacted later than the specific one. *Id.* Here, neither statute is "general" in the sense this Court commonly uses the term.

¶ 30 We have also held that when statutes are specifically designed by the Legislature to treat a given situation, that intent should be effectuated. *Id.* Here, both statutes appear to address the composition of a grand jury and who is permitted to be present in the grand jury room during its sessions.

¶ 31 Contrary to Appellee's argument, the fact that § 21 is not included in title 22 does not automatically invalidate the provision. While the inclusion of § 21 in title 22 would have been helpful, the Legislature did not see fit to put it there. However, its specific reference to alternate grand jurors makes § 21 applicable in this case.

¶ 32 Having reviewed these two statutory provisions, there is no apparent reason why they cannot be read together and effect given to each. There is nothing in their language which makes them mutually exclusive. To the contrary, by reading them together it is clear that the Legislature intentionally expanded the list of who may be present in the grand jury room during its proceedings to include alternate jurors. Under this reading, 22 O.S.2001, § 340(C) and 38 O.S.Supp.2004, § 21 can clearly be "harmonized" and the magistrate erred in finding otherwise.

¶ 33 The next portion of the State's argument focuses on the absence of one regular grand juror during the last twenty minutes of the proceedings one day. The juror missed a portion of the testimony of Appellee Leroy Patton (who was ultimately indicted). He also missed a portion of the testimony of Appellee Donald Hall (who was also ultimately indicted). Mr. Hall's testimony consisted only of questions regarding his name, driver's license number, his current telephone number and his willingness to defer his testimony until the following day. The regular grand juror was present the next day for the remainder of Hall's testimony.

¶ 34 The State argues the magistrate's ruling quashing the evidence received during the absence of this regular grand juror was error as there is nothing in the express words of the state constitution or any state statute requiring that all members of a grand jury attend each session of the grand jury or that all members of the grand jury even deliberate upon an Indictment.

¶ 35 As this Court has no reported cases on the issue, the State directs us to art. II, § 18, (providing that it takes only 9 jurors to return an Indictment), and cases from other jurisdictions finding that the absence of a "quorum of grand jurors" from a session is not grounds for setting aside grand jury action. An Indictment may be returned with only the votes of 9 members of the grand jury. Okla. Const. art. II, § 18. An Indictment is to be returned when all evidence before the grand jury, taken together, "is such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury." 22 O.S.2001, § 336. We presume grand jurors voting to indict follow the instructions given by the judge who advised them of their obligations, and that they act conscientiously in compliance with their oath. *See Turrentine v. State,* 1998 OK CR 33, ¶ 26, 965 P.2d 955, 968 ("[i]t is well established that juries are presumed to follow their instructions", quoting *Zafiro v. United States,* 506 U.S. 534, 540, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993).)

¶ 36 In the present case, there were at all times a sufficient number of regular grand jurors present in order to return the Indictments. It has not been shown that the regular grand jurors who voted to return the Indictments did not receive sufficient information upon which to base their decision. Therefore, the brief absence of a regular grand juror, even if an irregularity in the proceedings, does not warrant quashing all of the evidence gathered by the grand jury.

¶ 37 Further, our conclusion is the same despite the fact the absent juror missed testimony from defendants who were ultimately indicted. The missed testimony of Donald Hall concerned only his name, driver's license number, his current telephone number and his willingness to defer his testimony until the following day. Certainly, the Indictment returned against him was based upon more evidence than that. As to the missed testimony of Leroy Patton, since we

do not have the grand jury transcripts, we do not know the substance of the missed testimony. However, we do know that less than 20 minutes of the testimony was missed. The missed testimony was minimal and we fail to see any resulting prejudice to Appellees.

¶ 38 Further, any errors in the grand jury proceedings or defects in the Indictment due to the absence of a regular grand juror during approximately twenty minutes of testimony became moot when the felony Informations were filed. *See Cook v. State,* 1982 OK CR 131, ¶¶ 9–15, 650 P.2d 863, 866–67; *Stone v. Hope,* 1971 OK CR 302, ¶ 4, 488 P.2d 616, 618. Quashing all evidence received by the grand jury upon which the Indictments were based was unnecessary and not supported in the law.

¶ 39 The State next asserts that questioning of witnesses by alternate grand jurors is permissible and therefore not legal cause to quash all the evidence received by the grand jury. The only statutory prohibition on asking questions during grand jury proceedings is 22 O.S.2001, § 355(B)(4) which prevents a witness's attorney from making any objections, arguments or "otherwise address the multi-county grand jury or its legal advisor." There is no specific statutory provision prohibiting alternate grand jurors from asking witnesses questions. In fact, Oklahoma Uniform Jury Instruction—Criminal (2d) 12–4 provides in pertinent part: "each witness may be interrogated by any member of the jury and the attorney(s) for the State," citing 22 O.S.2001, §§ 333, 335, and 337 as authority. Based upon the applicable law, we find no express prohibition of alternate jurors from asking questions during evidentiary proceedings and therefore such practice is permissible.

¶ 40 In the last portion of this assignment of error, the State argues the reviewing judge erred by effectively sustaining in part the magistrate's order quashing the State's evidence relevant to the Information. Based upon our findings in Proposition II below, it is not necessary to address the propriety of

Judge Black's ruling as his ruling is not now relevant to the disposition of the case.

¶ 41 Having thoroughly reviewed the arguments and authority presented in Proposition I, we find 38 O.S.Supp.2004, § 21 is constitutional and the presence of the alternate grand jurors in the grand jury room and their participation during the evidentiary phase of the proceedings was proper. The magistrate's decision to the contrary was error. No reason exists for the suppression of the evidence obtained by the legally convened grand jury.

¶ 42 Based upon our finding in Proposition I of the constitutionality of the grand jury in this case, we summarily deny Propositions II and III.

## DECISION

The order of the magistrate quashing the Indictments brought by the Multi-County Grand Jury and suppressing evidence taken by the MultiCounty Grand Jury is REVERSED and the case is REMANDED to the District Court for Preliminary Hearing and proceedings not inconsistent with this opinion.

A. JOHNSON and LEWIS, JJ., concur.

C. JOHNSON, V.P.J., concur in result.

CHAPEL, J., dissent.

LEWIS, J., concurring.

¶ 1 The guarantees of our Bill of Rights regulating the composition of grand and *petit* juries are essentially directed to the *deliberative* character and function of those bodies in the exercise of their fact-finding powers. Thus, we have held that a body composed of thirteen qualified jurors which deliberates and returns a verdict in a criminal trial is not a "jury" guaranteed by Article II, § 19. *Brigman v. State,* 1960 OK CR 18, ¶ 4, 350 P.2d 321, 322–323. Neither is a body of eleven qualified jurors empowered to deliberate and render judgment, unless the defendant waives the constitutionally required composition. *Swift v. State,* 1973 OK CR 240, ¶ 3, 510 P.2d 286, 287.[1] The same has

---

1. While defendants in some cases perceive good reasons for waiving the requirement of twelve

been said of laws regulating the composition of grand juries. *United States v. Haskell*, 169 F. 449 (E.D.Okla.1909)(finding indictment by 21–person grand jury when territorial statutes required grand jury of 16 was *ex post facto* ), *citing Harding v. State*, 22 Ark. 210, 1860 WL 805 (Ark.1860) (under law requiring grand jury of 16 persons, indictment returned by jury of 17 persons must be quashed); *see also State v. Hawkins*, 10 Ark. 71, 1849 WL 561 (Ark.1849), discussed *infra*.

¶ 2 The suggestion that the twelve-person grand jury of our Constitution has three "built-in alternates" is untenable, and this is shown by the earliest authorities. In *Commonwealth v. Cherry*, 2 Va.Cas. 20, 4 Va. 20, 1815 WL 382 (Va.1815), the General Court of Virginia considered whether a plea in abatement was allowed against an indictment returned by a grand jury, one of whose number was an alien and thus disqualified by law. Consulting the common law authorities in the venerated treatises of Matthew Hale and William Hawkins,[2] the Court concluded that the English-born juror "Edward Slater, in the record of the said proceedings mentioned, was not a good and lawful Grand Juror, and that the said Presentment is not a good one." *Id.*, 4 Va. 20, 1815 WL 382 at * 3. Allowing the defendant's plea to quash the indictment for this reason was "the long established practice of the country, approved by the experience of several ages, and supported by the concurrent opinions of those

two great Commentators on Criminal Law." *Id.*[3]

¶ 3 Article II, Section 18 of the Bill of Rights mandates the grand jury "shall be composed" of twelve persons, at least nine of whom must concur to return a true bill of indictment. From its undoubted origins in English common law, this language refutes the premise of built-in alternates, because a body "composed of" eleven, ten, or nine grand jurors is not a "grand jury" that may deliberate and return an indictment in accord with the Oklahoma Constitution. Eleven qualified grand jurors is a gathering, not a "grand jury." *Harding, supra*, 22 Ark. 210, 1860 WL 805 at *2, *citing Hawkins*, 10 Ark. 71, 1849 WL 561.[4]

¶ 4 In *State v. Hawkins, id.*, a defendant moved to quash an indictment and showed that two of the sixteen regular grand jurors were disqualified from service. The State answered that the fourteen remaining jurors were qualified, any twelve of whom could have returned an indictment, and that all fourteen of the qualified jurors concurred in the indictment. The Supreme Court of Arkansas held that where the law required sixteen qualified men to constitute a grand jury, though "an indictment may be found by the concurrence of not less than twelve *yet the panel must consist of sixteen lawful men.*" 10 Ark. 71, 1849 WL 561, at *1 (emphasis added).

¶ 5 This right to a *deliberative body* composed of twelve qualified persons—*probi et*

jurors at trial, we can see no reason why these Appellees or any other grand jury targets would waive the right to be indicted, if at all, by a "grand jury" duly "composed" of twelve qualified persons, with at least nine of their number concurring in the indictment as required by Article II, § 18 of the Oklahoma Constitution.

2. Sir Matthew Hale, 2 *Historia Placitorum Coronae (History of the Pleas of the Crown)*, 155 (1713); Sir William Hawkins, 2 *Pleas of the Crown*, Ch. 25, § 18 (4th ed., 1762). Lord Chief Justice Hale wrote that all of the grand jurors must be *"probi et legales homines* [good and lawful men] and therefore, *if any one of the Indictors be outlawed*, though in a personal action, it is a sufficient plea to avoid the Indictment."* (emphasis added).

3. The *Cherry* Court later added to its opinion the following note:

Since the delivery of the above opinion, Mr. Chitty's "Practical Treatise on the Criminal Law" has been published. By referring to his 6th chapter, vol. 1, p. 307, the subject of the qualifications of Grand Jurors may be found. His authority is a full support of Judge White's opinion. "This necessity (he remarks) for the Grand Inquest *to consist of men free from all objection*, existed at Common Law, and was affirmed by the Statute 11 Henry 4, ch. 9, which enacts," &c. (emphasis added).
*Cherry*, 4 Va. 20, 1815 WL 382 at *4.

4. Blackstone remarked that the common law grand jury was composed "of twelve at the least, and not more than twenty three; that twelve may be a majority ... which number as well as the constitution itself, we find exactly described, so early as the laws of King Ethelred." IV W. Blackstone, *Commentaries on the Laws of England* 299 (1769).

*legales homines* in the words of Lord Chief Justice Hale—engaged in the fact-finding role, is the quintessence of the grand and *petit* "jury" guaranteed by the common law and Article II, Sections 18 and 19 of the Oklahoma Constitution. Our predecessors said as much in *Viers v. State,* 1913 OK CR 250, 10 Okl.Cr. 28, 36–37, 134 P. 80, 84:

> The grand jury must be selected, drawn, and impaneled as provided by law. The grand jury does not by our law consist of 12 men congregated by the mere order of the court. It consists of 12 men selected, drawn, and impaneled according to the requirements of the law, and if the law is not followed, it is *an incompetent grand jury.* (emphasis added).

Nothing could be further from the recently improvised notion of built-in alternates. Indeed, *Scribner v. State,* 1913 OK CR 131, 9 Okl.Cr. 465, 503, 132 P. 933, 947, shows that the common law meaning of Section 18 was well understood by our predecessors: to illustrate proper pleading, *Scribner* alluded to a defendant's claim that he was "indicted by a grand jury *composed of either more or less than 12 men,* or that nine members of the grand jury had not concurred" as the kind of *constitutional violation* that could be properly presented in a motion to set aside the indictment. *See also Parrish v. Lilly,* 1993 OK 80, ¶ 15, 883 P.2d 158, 162 (even where nine jurors may render judgment, the parties' right to jury trial is the right to a "decision, whether for them or against them, based on the *honest deliberations of twelve qualified individuals* ")(emphasis added).

¶ 6 We see a District Court acting in full accord with this twelve-person principle in *Grand Jury of Seminole County v. Dye,* 1977 OK 173, 571 P.2d 1200. *Dye* is the case that most likely generated the amendments to Title 38, Section 21, under consideration in this appeal. The District Court impaneled a Seminole County grand jury on April 12, 1976. The following day, after the grand jury began its sessions, the District Court learned that one of the grand jurors was disqualified by virtue of a felony conviction. Eight surplus grand jurors had already been released. *Id.,* at ¶¶ 19–20, 571 P.2d at 1204. The District Court drew an additional thirty names from the jury wheel, selected and qualified a replacement juror, and impaneled this reconstituted jury. After hearing evidence, the grand jury on May 7, 1976, issued accusations for removal of three Seminole County Commissioners and the County Assessor. *Id.,* at ¶¶ 7–10, 571 P.2d at 1203.

¶ 7 In June, 1976, another Judge of the District Court quashed the accusations for removal issued by this grand jury, finding the jury selection process violated then-current versions of 38 O.S.Supp.1975, § 21, and 22 O.S.1971, § 329. The State appealed. On appeal, the Supreme Court found the impaneling of the grand jury in substantial compliance with the statutes in effect at the time and reversed the order quashing the accusations for removal. *Dye,* at ¶ 29, 571 P.2d at 1207. That same year, the Legislature added three sentences to 38 O.S. § 21, providing for impaneling three alternate grand jurors and regulating their membership on the grand jury. The cumbersome procedures followed by the District Court in *Dye* certainly ensured a twelve-person grand jury, but probably also illustrated to the Legislature the need for a streamlined way to retain qualified alternates and protect the grand jury from an unexpected incapacity or disqualification of one of its members.[5]

¶ 8 The Constitution clearly fixes the composition of those deliberative bodies that will exercise fact-finding powers in grand jury inquests and criminal trials. However, I find no limitation on the number of persons who may be qualified as alternate grand or *petit* jurors in anticipation of exercising these powers if a regular juror is unable to do so. This question has long been a subject of legislation, and in the absence of statutory direction, the common law.[6] 22 O.S.2001, § 9;

---

5. The tremendous practical value of alternate jurors is also shown in the *Swift* case, *supra,* 1973 OK CR 240, ¶ 3, 510 P.2d at 287, where the incapacity of a *petit* juror and the lack of a viable alternate resulted in a violation of Article II, § 19, and reversal of the judgment on appeal.

6. Of the legislative power to regulate the qualifications of grand jurors, Blackstone observed that the law required "[t]hey ought to be freeholders, but to what amount is uncertain: which seems to be *casus omissus,* and *as proper to be supplied by the legislature as the qualifications of the petit*

*Smith v. Territory,* 1904 OK 110, ¶¶ 0–3, 14 Okla. 518, 79 P. 214 (territorial courts possessed jurisdiction to impanel grand jury according to common law when no method provided by statute). Early cases reveal that Congress adopted the criminal procedure statutes of Arkansas as the law of Indian Territory, and these statutes provided for summoning regular and alternate grand jurors in the territorial Courts. *Gardner v. United States,* 1904 IT 10, ¶ 2, 82 S.W. 704; *Reynolds v. United States,* 1907 IT 8, ¶ 3, 103 S.W. 762; Mansf. Dig., § 3982. These procedures were almost certainly familiar to some of the twenty seven territorial lawyers who served as delegates to the Constitutional Convention in 1906–7. A.M. Gibson, Oklahoma: A History of Five Centuries 196–197 (Univ. of Oklahoma Press, 1981).[7]

¶ 9 Considering the language of Article II, Section 18 against this backdrop of its common law heritage, I am convinced the Framers of Section 18 would find an indictment presented by a supposed "grand jury" of nine or ten far more repugnant to their Constitution than an act of the Legislature providing for three qualified alternate grand jurors. The theory of built-in alternates, which purportedly arises from the "self-executing" nature of Section 18, is an innovation unsupported by history or text. Ironically, the loose reading of Section 18 that would quash these indictments endangers constitutional liberty by rendering Section 18 powerless against truly flagrant legislative and judicial encroachments on the grand jury. After all, says this novel theory, only nine *voting* grand jurors are constitutionally required; three of the twelve are constitutionally expendable at any time. These "surplus" grand jurors could be dispensed with just as easily by an ill-advised statute or an intemperate judge as by illness or disqualification,

and this Court would have no constitutional grounds to hold otherwise.

¶ 10 The alternate grand jurors provided by 38 O.S.Supp.2004, § 21, are fully compatible with Article II, Section 18 of the Oklahoma Constitution. The statute provides that alternates "shall attend all functions of the grand jury during its term and shall be subject to all laws governing grand jurors. Provided that, *no alternate juror shall participate in any deliberations of the grand jury* until appointed to fill a vacancy" (emphasis added). Title 22, Section 340(C) further provides that "no person, except the members of the grand jury, shall be permitted to be present during the expression of juror opinions or the giving of votes upon any matter before the grand jury." The District Court instructs the grand jurors that "no alternate grand juror shall participate in any deliberations of the grand jury until appointed" by the Court. OUJI–CR(2d) 12–2. These statutes and corresponding jury instructions ensure the grand jury is a deliberative body of twelve qualified persons, no more *and no less.* Alternate grand jurors are sworn officers of the court under a duty to be fair and impartial, and it has not been shown here that alternate grand jurors violated their oaths or instructions.

¶ 11 Unless public resources are to be wasted and investigations thwarted by the disqualification or incapacity of a regular grand juror, providing for qualified alternates makes the same good sense with grand jurors as it does with *petit* jurors. There is no need to harmonize a thirty-year-old statute, enacted for this legitimate purpose, with the language of Article II, Section 18. There was never any conflict between them. For more than a century, Section 18 has guaranteed that no person shall be indicted in Oklahoma except by a grand jury "composed of"

---

*jury; which were formerly equally vague and uncertain, but are now settled by several acts of Parliament."* IV W. Blackstone, *Commentaries on the Laws of England* 299 (1769). *See, e.g.,* N.M. Stat. Ann. § 31–6–1 (Michie 1978)(grand jury shall be composed of twelve regular jurors and a sufficient number of alternates to insure the continuity of the inquiry); 42 Pa. Cons.Stat. Ann. § 4545 (grand jury shall be composed initially of 23 members and have seven to fifteen alternates).

7. Thirty-four delegates to the Oklahoma Constitutional Convention, including its President, William H. Murray, had also served as delegates to the 1905 Sequoyah Convention. Murray was "steeped in basic law and was regarded as a leading authority on constitutional government." A.M. Gibson, Oklahoma: *A History of Five Centuries* 196.

twelve persons. The Legislature has provided in every case for a number of qualified alternate grand jurors sufficient to meet our Constitution's unyielding command. I concur in the judgment of the Court. I am authorized to state that Judge Arlene Johnson joins in this concurrence.

## C. JOHNSON, V.P.J., concur in result.

¶ 1 I concur with the result herein as it is limited to the constitutionality of the Grand Jury for the limited purpose of the criminal matter before the Grand Jury. I still have grave reservations as to the jurisdiction of the "Multicounty Grand Jury" as it relates to handling single-county matters that do not affect Oklahoma County; that is for another day.

## CHAPEL, J., dissenting.

¶ 1 I dissent to the majority's resolution of Proposition I. A magistrate and trial judge found that the statutory provisions allowing for alternate jurors in multicounty grand juries cannot be harmonized with the Oklahoma Constitution. After reviewing the plain language of the constitution, I agree. I would find that portion of 38 O.S.Supp.2004, § 21, which authorizes three additional alternate grand jurors, unconstitutional and uphold the decision below.

¶ 2 At the outset, I want to compliment my colleague, Judge Lewis, on his concurring opinion. I believe it is excellently researched and written. I absolutely agree with his explanation of why any grand jury in Oklahoma must be composed of twelve qualified jurors. My own analysis depends entirely on this argument. As I explain below, I cannot agree with his conclusion that the Oklahoma grand jury, as provided for by the constitu-

tion, does not effectively provide alternates. Because I believe that alternates are built into the constitutional language, I conclude that the statute providing separately for grand jury alternates is not constitutional.

¶ 3 Article 2, § 18 of the Oklahoma Constitution states, "A grand jury shall be composed of twelve (12) persons, any nine (9) of whom concurring may find an indictment or true bill."[1] This plain language means that a grand jury must consist of twelve qualified people, but only nine are required to return an indictment or true bill. As a practical matter, this creates a system of alternate jurors within the constitutional language authorizing a grand jury. If only nine jurors are necessary to return a true bill, then the remaining three constitutionally-mandated jurors are, in effect, alternates. For this reason, I disagree with the majority's conclusion that § 18 does not address issues relating to alternate grand jurors. As I read the constitutional provision, it includes provision for up to three alternate grand jurors within the mandated twelve jurors.[2]

¶ 4 As the majority states, the constitution's grand jury provisions found in § 18 are self-executing.[3] The constitution provides for some supplemental statutory framework to allow a grand jury to convene and function. However, the Legislature only has authority to pass enabling legislation where the constitution itself is silent on an issue. We have upheld legislation which puts in place a functional framework by addressing issues not included in the constitutional provision.[4] This framework includes the role of the district attorney or Attorney General, the presence of a court reporter, the obtaining, use and disclosure of transcripts, and questions of who may be present in the grand jury

1. Ok. Const. art. 2, § 18. "Any interpretation of Section 18 must begin with a reading of the provision as a whole, giving effect to each part through the natural significance of the words used and their grammatical arrangement." *State v. Bezdicek*, 2002 OK CR 28, 53 P.3d 917, 919.

2. In interpreting the plain language of § 18, the Oklahoma Supreme Court found that it mandated "the number, unanimity and impartiality" of grand jurors, and is self-executing in this respect. *Movants to Quash Multicounty Grand Jury Sub-*

*poenas v. Powers*, 1992 OK 142, 839 P.2d 655, 656. *See also, In Re House Bill. No. 145*, 205 Okla. 364, 1951 OK 288, 237 P.2d 624, 627. This Court has held that a true bill requires at least nine grand jurors to unanimously concur by vote or ballot on each separate indictment. *Eubanks v. State*, 5 Okla.Crim. 325, 114 P. 748, 752 (1911).

3. *Bezdicek*, 53 P.3d at 918.

4. *See generally* 22 O.S.2001, §§ 311–346.

room during grand jury sessions.[5] We have also upheld legislation creating a framework for multicounty grand juries.[6] However, we have held that these statutory provisions must be truly supplemental, and cannot either add to or subtract from the plain language of the constitution.[7]

¶5 The majority sets forth the correct tests for interpretation of constitutional and statutory measures. We must attempt to harmonize the statute with the constitution,[8] construing the statutory provision liberally and upholding it unless it is inconsistent with the constitutional language.[9] Applying the appropriate legal tests, I reach the opposite conclusion from the majority. I agree with the majority that the principle of allowing alternate jurors is sensible at both the grand jury and petit jury level. I believe the constitution itself recognizes this principle. I join the lower courts in this case in concluding that the plain language of § 18, which specifies the number of grand jurors and effectively authorizes alternate grand jurors, cannot be harmonized with the statutory language authorizing additional alternate grand jurors beyond the number twelve mandated by the constitution. The statutory language covers an issue already contained in the constitutional provision. It is contradictory, in that it allows for three grand jurors to be seated over the twelve provided for in the constitution; it is superfluous, because the constitutional language provides for alternate jurors. I believe the moving parties met their burden to show the statutory provision

cannot be harmonized with the constitutional language, and I would uphold the lower courts' decision.

¶6 I believe the magistrate was right. Therefore, I must address the issue of her jurisdiction over the question raised in the State's second proposition of error. A magistrate's normal duties include presiding over and conducting preliminary examinations, and determining whether a crime has been committed and if there is probable cause to bind the defendant over for trial.[10] This necessarily includes the authority to rule on motions which may provide a defense to the criminal charge.[11] A magistrate may rule on a motion to suppress evidence before the preliminary hearing is held or the defendant is bound over.[12] In fact, a party must raise an objection to illegally obtained evidence at the earliest possible time.[13] This is exactly what the defendants here did.

¶7 The defendants filed a Motion to Quash Indictment and to Suppress Any Evidence Obtained by the Multi–County Grand Jury. The motion claimed the inclusion of alternates in the grand jury process rendered that process faulty and the Indictments from that proceeding invalid. The defendants complained that the evidence on which the indictments relied was illegally obtained through a faulty grand jury process. They asked that the State be barred from using this evidence in support of any indictments or criminal prosecution. This is an excellent example of a motion to suppress illegally obtained evidence, and the magistrate was required to rule on it.[14]

5.  22 O.S.2001, § 340.

6.  22 O.S.2001, §§ 350–363 (Multicounty Grand Jury Act).

7.  *Bezdicek*, 53 P.3d at 920–21. See also *State v. Hooker*, 1908 OK 244, 22 Okla. 712, 98 P. 964, 967.

8.  *State v. Pratt*, 1991 OK CR 95, 816 P.2d 1149, 1151, *overruled on other grounds*, *Pitts v. State*, 2003 OK CR 21, 78 P.3d 551.

9.  *State v. Howerton*, 2002 OK CR 17, 46 P.3d 154, 157–58; *Rivas v. Parkland Manor*, 2000 OK 68, 12 P.3d 452, 456; 25 O.S.2001, § 29.

10.  *Harris v. State*, 1992 OK CR 74, 841 P.2d 597, 600; *State v. Benson*, 1983 OK CR 43, 661 P.2d 908, 909.

11.  *Harris*, 841 P.2d at 600 (claim of immunity would complete defense to the criminal charge); *Nicodemus v. District Court of Oklahoma County*, 1970 OK CR 83, 473 P.2d 312, 315 (magistrates may rule on sufficiency of the evidence, motions to suppress and demurrers).

12.  *Day v. Freeman*, 1990 OK CR 35, 792 P.2d 1193, 1194; *Stone v. Hope*, 1971 OK CR 302, 488 P.2d 616, 619.

13.  *Hyde v. Hutchison*, 1971 OK CR 162, 483 P.2d 766, 768; *Gragg v. State*, 72 Okl.Cr. 189, 114 P.2d 491, 492 (Okl.Cr.1941).

14.  *Holt v. State*, 1973 OK CR 38, 506 P.2d 561, 565 (magistrate must rule on any questions of law properly before her).

¶ 8 I believe the magistrate correctly ruled on the issue of the evidence obtained by the grand jury. I also agree with Judge Black's subsequent ruling that the State may use any evidence obtained independently from and prior to the grand jury proceedings. If the State wishes to proceed against these defendants, it may proceed with the preliminary hearing as ordered by Judge Black. I would affirm the rulings below, and deny this appeal.